E.I.C. ELKINS CONSTRUCTORS, INC.; C.W. Roberts Contracting, Inc.; The Florida Council of Associated General Contractors; Florida Transportation Builders' Association, Inc.; Associated Builders and Contractors of Florida, Inc.; Underground Utility Contractors of Florida; Florida Roofing, Sheet Metal & AC Contractors Association; Construction Association of South Florida; Engineering Contractors Association of South Florida, Inc.; Glass Association of Plumbing Heating and Cooling Contractors; Florida Concrete & Products Association; and Asphalt Contractors Association of Florida, Plaintiffs,

v.

Lawton CHILES, in his official capacity as Governor of Florida; Jim Smith, in his official capacity as Secretary of State of Florida; Bob Butterworth, in his official capacity as Florida Attorney General; Gerald Lewis, in his official capacity as State Comptroller of Florida; Tom Gallagher, in his official capacity as State Treasurer and Insurance Commissioner of Florida; Bob Crawford, in his official capacity as Florida Commissioner of Agriculture; and Doug Jamerson, in his official capacity as Florida Commissioner of Education, Defendants.

No. TCA 94–40247–WS.

United States District Court,
N.D. Florida,
Tallahassee Division.

July 1, 1994.

**932**

Neil H. Butler, Neil H Butler P.A., Tallahassee, FL, for plaintiffs.

Harry F. Chiles, William W. Wertz, Atty. General's Office, Dept. of Legal Affairs, Tallahassee, FL, for defendants.

## *ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFFS*

STAFFORD, District Judge.

As part of the health care reform movement that began in Florida with passage of the Health Care Reform Act of 1992, the Florida Legislature enacted a law that provides that, "[e]ffective July 1, 1994, every contractor, and each subcontractor of every contractor, shall ensure that each employee who works on a competitively bid state agency contract valued in excess of $100,000 shall have access to hospitalization and medical insurance benefits during his employment on such agency contracts." Fla.Stat. § 287.088(2) (1993). Plaintiffs in this action seek an order declaring that this law, section 287.088, Florida Statutes, is preempted by section 1144(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001–1381.

On June 17, 1994, the parties appeared, through counsel, for oral argument on Plaintiffs' Motion for Temporary Injunction (Doc. 3). In open court, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, counsel agreed to consolidate the hearing on Plaintiffs' motion for injunctive relief with trial on the merits. Having now considered the parties' submissions, counsels' arguments, and the relevant caselaw, the court has determined that section 287.088, Florida Statutes, is preempted by federal law.

### I. *BACKGROUND*

#### A. *Section 287.088*

When creating the 1992 Florida Health Plan, the Florida Legislature (the "Legislature") made "expansion of employer-based health care coverage options a priority." Fla.Stat. § 408.006(3). The Legislature found that expansion of employer-based health care coverage was needed because "health care inflation, a deteriorating health care delivery system, reduced state revenues,

changing demographics, and the erosion of private health insurance ha[d] converged to create a crisis of reduced access to health services for the poor and the uninsured." Fla.Stat. § 408.005(1).

The Legislature addressed the need for expanded health care coverage by first establishing the following insurance reform goal: "On or before July 1, 1994, the state shall institute reforms in private health insurance that shall ensure that employed and unemployed residents have access to basic health insurance coverage." Fla.Stat. § 408.006(3). To ensure achievement of this goal, the Legislature directed the Agency for Health Care Administration (the "Agency") to submit, by December 31, 1992, interim recommendations, and by December 31, 1993, final recommendations for implementation of the insurance reform goal. Fla.Stat. § 408.006(3)(a). The Agency was directed to consider, when developing its recommendations, strategies that would, among other things, "[r]equire employers receiving government contracts and grants to offer health care coverage to all employees." Fla.Stat. § 408.006(3)(b)10.

The Legislature responded to the Agency's recommendations by enacting section 287.088, which requires contractors and their subcontractors to ensure that all employees who work on competitively bid state agency contracts valued in excess of $100,000 have access to hospitalization and medical insurance benefits. The statute provides that the obligation to ensure employee access to these benefits—the monetary value of which "shall be based on hospitalization and medical insurance coverage for the employee, the employee's spouse, and legally dependent children," Fla.Stat. § 287.088(2)—may be "fulfilled through the employer's payment of wages or contributions to employee hospitalization and medical insurance benefit plans, or any combination thereof." Fla.Stat. § 287.088(2). Interestingly, while the statute provides that the payment of these wages and/or contributions may not be a payment "in lieu of the employee's regular wages for the type of work he will perform under the state contract," Fla.Stat. § 287.088(4)(a), the statute says nothing about whether employers must pay the full cost of the coverage made accessible. Defendants in this case suggest that section 287.088 does *not* require payment of the full cost of coverage. Plaintiffs, on the other hand, suggest that, *if* payment of the full cost is not required, section 287.088 presents an important but an un-answered question: At what point does payment of less than the full cost of coverage trigger "administrative procedures for the resolution of written complaints pertaining to the *underpayment* of hospitalization and medical insurance benefits?" Fla.Stat. § 287.088(6) (emphasis added).

Before signing a state agency contract, a contractor must provide the agency with written documentation "to demonstrate that the provisions of [section 287.088] have been satisfied by the contractor and the subcontractors, if any." Fla.Stat. § 287.088(3). If, during the bidding process, the contractor fails to provide the necessary documentation, or if the documentation demonstrates that the contractor has not ensured access to hospitalization and medical insurance benefits for each employee who will work on the contract, then the agency must award the contract to another contractor who has complied with the provisions of section 287.088. Fla.Stat. § 287.088(3). If and when a contract is actually awarded, the contractor—and any subcontractor under him—must "pay to the state $200 as liquidated damages for each employee of the contractor, or of any subcontractor under him, who performs any portion of the contract work for each calendar day, or portion thereof, if such employee's hospitalization and medical insurance benefit contributions have not been paid by the employer." Fla.Stat. § 287.088(4)(b).

## B. *ERISA*

ERISA is a comprehensive legislative scheme enacted by Congress to protect the interests of employees and their beneficiaries in employee benefit plans, including both welfare plans and pension plans. *See* 29 U.S.C. § 1001 (policy declaration). ERISA defines a welfare plan as any "plan, fund, or program" established or maintained by an employer for the purpose of providing employees or their beneficiaries, "through the purchase of insurance or otherwise," with

"medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). With limited exceptions not pertinent here, ERISA generally covers all employee benefit plans sponsored by employers or employee organizations. 29 U.S.C. § 1003(a). The record in this case reveals that at least two of the Plaintiffs maintain, for at least some of their employees, hospitalization and medical insurance benefit plans that are covered by ERISA.[1] See Doc. 27, Ex. 1.

Congress included within ERISA a preemption clause that states: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). A plan described in section 1003(a) and not exempt under section 1003(b) is an ERISA-covered plan.

Subsection (b) of section 1144 lists limited exceptions to the preemption mandated by section 1144(a). In particular, subsection (b) contains both an "insurance savings clause," which reserves to the states the power to enforce state laws regulating insurance, 29 U.S.C. § 1144(b)(2)(A), and a "deemer clause," which provides that an employee benefit plan governed by ERISA shall not be deemed to be an insurance company, an insurer, or to be engaged in the business of insurance for purposes of any state law purporting to regulate insurance companies or insurance contracts. 29 U.S.C. § 1144(b)(2)(B).

The Supreme Court has observed that ERISA's preemption clause is "conspicuous for its breadth." FMC Corp. v. Holliday, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 n. 17, 103 S.Ct. 2890, 2900 n. 17, 77 L.Ed.2d 490 (1983), the

Court noted that when Congress made a subject of exclusive federal concern all matters relating to ERISA-covered employee benefit plans, the phrase "relate to" was not given a restrictive or special meaning. To the contrary, according to the Supreme Court, the phrase "relate to" was intended by Congress to be applied in its broadest sense. Looking to a dictionary for the plain meaning of the word "relate," see Black's Law Dictionary 1452 (4th ed. 1968) ("relate" means to stand in some relation to, to pertain, to have connection with, to refer), the Supreme Court determined that a state law relates to an employee benefit plan if the law simply "has a connection with or reference to such a plan." Shaw, 463 U.S. at 97, 103 S.Ct. at 2900.

Statements by House and Senate sponsors of ERISA disclose the concern that prompted the preemption provision. In the House, Representative Dent said during a debate about ERISA: "With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation." Shaw, 463 U.S. at 99, 103 S.Ct. at 2901 (quoting 120 Cong.Rec. 29197 (1974)). Senator Williams echoed these sentiments when he said: "It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." Shaw, 463 U.S. at 99, 103 S.Ct. at 2901 (quoting 120 Cong. Rec. 29933 (1974)). The Supreme Court explained the rationale behind ERISA's preemption provision as follows:

ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patch-work scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might

---

1. At the request of the court, the parties filed supplemental memoranda addressing the issue of Plaintiffs' standing to sue. See Docs. 26–28. Having now studied the supplemental memoranda, heard the arguments of counsel, and reviewed the relevant caselaw, the court has determined that the case should not be dismissed for lack of standing.

lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations.

*Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

That Congress was primarily concerned with the threat of inconsistent regulation does not mean that Congress meant to confine preemption to state laws relating to just those subjects regulated by ERISA. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. at 99 n. 20, 103 S.Ct. at 2901 n. 20 (remarks of Senator Javits, explaining that Congress refused to define "the perimeters of preemption in relation to the areas regulated by [ERISA]"). In fact, the legislative history of ERISA makes clear that Congress made a conscious decision to preempt state laws relating to benefit plans in general rather than state laws relating only to those subjects covered by ERISA. *Shaw,* 463 U.S. at 98–99, 103 S.Ct. at 2901 (discussing the legislative history). As the Supreme Court said in *Shaw:*

> The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language.

*Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900–01 (footnote and citation omitted).

Taking its clue from the expressions of Congressional intent, the Supreme Court has said that ERISA's preemption provision displaces all state laws that fall within the provision's sphere, including state laws that are consistent with ERISA's substantive requirements, state laws that have no more than an indirect effect upon the regulation of employee benefit plans, and state laws that deal with subject matters other than those covered by ERISA. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

## II. *ANALYSIS*

In deciding whether ERISA preempts section 287.088, the court must first address this question: Does section 287.088 "relate to" ERISA benefit plans? If the answer to the question is "yes," then the court must determine whether an exception to preemption—namely the exception for a law regulating insurance—applies.

### A. *Does Section 287.088 "Relate to" ERISA Benefit Plans?*

■ The Supreme Court has repeatedly reaffirmed the rule announced in *Shaw,* 463 U.S. at 97–98, 103 S.Ct. at 2900, that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *E.g., FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. at 739, 105 S.Ct. at 2388–89. In *Mackey,* 486 U.S. at 829, 108 S.Ct. at 2185, the Supreme Court concluded that ERISA preempted a Georgia statute barring the garnishment of "[f]unds or benefits of [an] . . . employee benefit plan or program subject to the provisions of [ERISA]." Ga.Code Ann. § 18–4–22.1 (1982). The Court commented in *Mackey* that the Georgia statute's express reference to ERISA employee benefit plans was sufficient *in itself* to bring the statute within ERISA's preemptive reach. *Mackey,* 486 U.S. at 830, 108 S.Ct. at 2185–86; *see also Heitkamp v. Dyke (In re Dyke),* 943 F.2d 1435 (5th Cir.1991) (interpreting *Mackey* to mean that state laws which specifically refer to ERISA benefit plans are preempted even if such laws affect benefit plans in a tenuous or peripheral manner).

More recently, in *Dist. of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), the Supreme Court considered a provision in the District of Columbia Workers' Compensation Equity Amendment Act of 1990—a provision requiring that "[a]ny employer who provides health insurance coverage for an

employee shall provide health insurance coverage equivalent to the existing health insurance coverage of the employee while the employee receives or is eligible to receive workers' compensation benefits under this chapter." *Greater Washington,* at ——, 113 S.Ct. at 582, 121 L.Ed.2d at 519 (quoting section 2(c)(2) of the Equity Amendment Act). Noting that no one contended that employers in the District of Columbia were providing health insurance for their employees without thereby administering welfare plans within the meaning of ERISA, the Court wrote: "Section 2(c)(2) of the District's Equity Amendment Act specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted." *Greater Washington,* at ——, 113 S.Ct. at 583, 121 L.Ed.2d at 520. The Court was not persuaded otherwise by the fact that the Equity Amendment Act was part of the District of Columbia's regulation of ERISA-*exempt* workers' compensation plans rather than ERISA-*covered* welfare benefit plans. Nor was the Court persuaded by the petitioner's argument that, even *if* the Equity Amendment Act—by reference—related to an ERISA-covered plan, the law should nonetheless survive preemption if employers could comply with the law through separately administered exempt plans. In essence, the Court summed up its decision by saying that the Equity Amendment Act made reference to ERISA-covered plans; therefore, the Equity Amendment Act related to ERISA-covered plans for preemption purposes; and "that is the end of the matter." *Greater Washington,* at ——, 113 S.Ct. at 585, 121 L.Ed.2d at 522.

Under section 287.088, a contractor's or subcontractor's obligation to ensure employee access to hospitalization and medical insurance benefits "shall be fulfilled through the employer's payment of wages or contributions to *employee hospitalization and medical insurance benefit plans,* or any combination thereof." Fla.Stat. 287.088(2) (emphasis added). As the quoted language reveals, section 287.088 makes specific reference to welfare benefit plans regulated by ERISA. Like the laws in *Mackey* and *Greater Washington,* section 287.088 is preempted on that basis alone.

Even if the express reference to hospitalization and medical insurance benefit plans were not enough to satisfy the "relate to" test for ERISA preemption, section 287.088 satisfies the test because the Florida statute also has a "connection with" ERISA benefit plans. *See FMC v. Holliday,* 498 U.S. at 59, 111 S.Ct. at 408 (applying the "reference to" and "connection with" test to determine whether a law relates to ERISA-covered plans). Some of the employers in this case have sworn that they already have in place ERISA-covered plans that do not comply in all respects with section 287.088. Docs. 15, 16, & 27. For example, the Chief Executive Officer of E.I.C. Elkins Constructors, Inc. ("Elkins") has said that, under its current benefit plan, the company does not pay for hospitalization or medical insurance benefits for an employee's spouse or dependents. If Elkins seeks to achieve administrative efficiencies by incorporating the requirements of section 287.088 into its existing plan, then the existing plan has to be modified; and—clearly—there is a "connection" between section 287.088 and an ERISA-covered plan. If Elkins—or any other employer with or without an existing employee benefit plan—establishes a separate plan to administer the program of benefits required under section 287.088, that separate plan would likely be an ERISA plan itself; and, again, section 287.088 would have a "connection with" an ERISA-covered plan.

Defendants would have this court ignore the obvious connection between section 287.088 and ERISA plans because, they argue, section 287.088 merely requires that state contractors and subcontractors "ensure access" to health care benefits for their employees and does not require or in any way attempt to regulate a specific health care *plan.* Defendants rely, in part, on *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), for their argument. In *Fort Halifax,* the Supreme Court held that a Maine statute, which required employers to make a one-time, lump-sum payment of severance benefits in the event of a plant closing, was not preempted by ERISA. Mindful that ERISA's preemption provision refers not to state laws relat-

ing to employee benefits but to state laws relating to employee benefits *plans,* the Court first construed the word "plan" to connote some minimal, ongoing administrative scheme or practice, then concluded that preemption of the Maine statute would not further the purposes of ERISA because the statute required neither the establishment nor the maintenance of an ongoing administrative scheme or practice.

■ Contrary to Defendants' suggestions, this court finds that the statute in *Fort Halifax* is decidedly different from the one at issue here. Unlike the statute in *Fort Halifax,* which required a one-time payment of benefits triggered by a single event, section 287.088 requires that an employer ensure *continuing* access to hospitalization and medical insurance benefits, not only for employees but also for the employees' spouses and dependents. To be sure, section 287.088 does not mandate, nor even mention, a specific administrative scheme; it does not require contributions to a plan but permits, as an alternative, payment of additional wages. The court is not persuaded, however, that preemption can be avoided simply because it may be possible, albeit highly improbable, that an employer can ensure access to hospitalization and medical insurance benefits without modifying, establishing or maintaining an ERISA-covered *plan.*

Interestingly, the emergency rule promulgated to implement section 287.088 contains language suggesting that the drafters of the rule recognized the statute's obvious connection with ERISA *plans. See* Doc. 23 (copy of emergency rule attached). Under such emergency rule, for example, "access" is defined as the "availability of hospital and medical insurance benefits," Fla.Admin.Code R. 60AER94–1(2)(d) (1994); and the phrase "hospital and medical insurance benefits" is, in turn, defined to mean "a health insurance *plan* in which coverage is authorized to include the employee, employee's spouse, and legally dependent children." Fla.Admin.Code R. 60AER94–1(2)(f) (1994) (empha-

sis added). Thus, under the emergency rule, an employer must ensure access to a health insurance *plan.* While an employer may be able to comply with section 287.088 by paying additional wages to those employees who, for example, have access to plans through their spouses' employers, compliance with the statute—for the most part—will be accomplished through an employer's modification, establishment or maintenance of an ERISA-covered plan.

In support of their preemption argument, Plaintiffs cite *Standard Oil Co. of California v. Agsalud,* 633 F.2d 760 (9th Cir.1980), *aff'd,* 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981). In *Agsalud,* the Ninth Circuit considered a pre-ERISA Hawaii law that required employers to provide employees with a comprehensive prepaid health care plan including, at the very least, hospital, surgical, medical, maternity, diagnostic service, and substance abuse benefits.[2] Haw.Rev.Stat. § 393–7(c)(1)–(6) (1976). The Ninth Circuit affirmed the district court's decision to preempt the law because it related to the plaintiff's ERISA-covered employee welfare plan. The Supreme Court has since explained that the Hawaii law posed two types of problems:

> First, the employer in [*Agsalud*] already had in place a health care plan governed by ERISA, which did not comply in all respects with the Hawaii Act. If the employer sought to achieve administrative efficiencies by integrating the Hawaii plan into its existing plan, different components of its single plan would be subject to different requirements. If it established a separate plan to administer the program directed by Hawaii, it would lose the benefits of maintaining a single administrative scheme. Second, if Hawaii could demand the operation of a particular benefit plan, so could other States, which would require that the employer coordinate perhaps dozens of programs.

*Fort Halifax Packing Co. v. Coyne,* 482 U.S. at 13, 107 S.Ct. at 2218. Because these were

---

**2.** In 1983, Congress amended ERISA to exempt from preemption certain provisions of the Hawaii Act in place before the enactment of ERISA. That Congress chose to amend ERISA in such a

manner does not, in any way, affect this court's analysis about whether section 287.088 relates to ERISA-covered plans.

the very problems that ERISA was intended to prevent, the Hawaii statute could not survive preemption under section 1144(a).

Defendants contend that Plaintiffs' reliance on *Agsalud* is misguided because—they say—the Hawaii law *"regulated* employee benefit *plans"* and, in contrast, section 287.088 "merely requires state contractors to 'ensure' their employees 'access' to health benefits" and does not require the state to regulate "any ERISA benefit *plan."* Doc. 20 at 10 (emphasis in original). Certainly, Defendants are correct in their characterization of the Hawaii statute—it directly and significantly involved the State of Hawaii in the regulation of prepaid group health care plans. Defendants may also be correct when they suggest that Florida's law does *not* directly and significantly involve the State of Florida in the regulation of employee welfare plans. It must be remembered, however, that Congress said preemption is required not only when a state law goes so far as to *regulate* ERISA plans but also when a state law does nothing more than *relate to* ERISA plans. The Hawaii Prepaid Health Care Act was preempted because it related to ERISA plans. Florida's section 287.088 is subject to preemption for the same reason.

In *General Electric Co. v. New York State Dep't of Labor,* 891 F.2d 25 (2d Cir.1989), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990), the Second Circuit considered a New York law that required employers who were awarded public works contracts to provide wage supplements to their employees in accordance with local prevailing practices. The law defined "supplements" as "all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not 'wages' within the meaning of the law, including, but not limited to, health, welfare, nonoccupational disability, retirement, vacation benefits, holiday pay and life insurance." *Id.* at 27 (quoting N.Y.Lab.Law § 220(5)(b)). The prevailing supplement rate was defined as "that which is paid in the locality by virtue of collective bargaining agreements between bona fide labor organizations and private employers who employ at least 30 percent of the workers in the same trade in the same locality." *Id.* at 26 (quot-

ing N.Y.Lab.Law § 220(5)(a)). Where the cost of benefits provided by a contractor did not correspond with the cost of prevailing local benefits, New York law required contractors either to bring the cost of their prescribed benefits into equivalence with the cost of the local prevailing benefits or to pay the additional cost directly to their employees. Contractors were not permitted to substitute one form of benefit for another—that is, they were given no credit for the cost of providing benefits not deemed to be prevailing benefits. Quite simply, contractors were required either to bring their welfare plans into conformity with those prevailing in the locality or to make up the difference through cash payments to their employees.

In deciding that the New York law clearly related to the ERISA plans of public works contractors, the Second Circuit implicitly rejected any notion that a cash-payment provision would save the statute from preemption. The court noted that employers whose benefit plans were non-conforming could not eliminate the differences in benefits by making the kind of single cash payments that were excepted from ERISA preemption in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. at 12, 107 S.Ct. at 2218. Indeed, the court remarked, employers choosing to make up benefit differences through cash payments would be required to make continuous calculations, adjustments, and payments. Writing for the majority, Judge Van Graafeiland was unable to agree with the dissenting judge who concluded that the law should not be preempted (1) because the law represented a valid exercise of the state's traditional regulatory authority, (2) because the law did not *require* alteration of ERISA plans but merely provided plan alteration as one option for complying with state law, and (3) because the law's effect on employee benefit plans was negligible and wholly incidental to the law's primary purpose of putting all public works bidders on an equal footing.

Like the dissenting judge in *General Electric Co. v. New York State Dep't of Labor,* 891 F.2d at 30, the defendants in this case suggest that the state law at issue, section 287.088, should not be preempted because it is a valid and unexceptional exercise of Flori-

da's police power—an attempt to equalize the access to health benefits for those persons working on state contracts—that permits, but does not require, alteration or establishment of an ERISA plan. Like the majority in *General Electric*, this court is unpersuaded by such arguments. Instead, this court finds that because section 287.088 makes specific reference to, and is connected with, ERISA plans, the law relates to ERISA plans and is, therefore, subject to preemption under Title 29, United States Code, Section 1144(a).

**B.** *Is Section 287.088 a Law Regulating Insurance?*

■ Having decided that section 287.088 relates to ERISA-governed plans, the court must next decide whether the statute falls within the scope of ERISA's savings clause, which provides that "[e]xcept as provided in [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). The Supreme Court has adopted a two tier test to determine whether a state law regulates insurance. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Anschultz v. Connecticut Gen. Life Ins. Co.*, 850 F.2d 1467 (11th Cir.1988). To be saved from preemption, a state law must pass both tiers of the test. *Anschultz*, 850 F.2d at 1468.

■ In the first tier of the analysis, the court must analyze the statute given the "common-sense view" of the savings clause. The common-sense view of the phrase "regulates insurance" means that the law must have more than just an impact on the insurance industry; it must be "specifically directed toward that industry." *Dedeaux*, 481 U.S. at 50, 107 S.Ct. at 1554. If the state law is not specifically directed toward the insurance industry, then the state law does not fall within the savings clause and is not saved from preemption.

The second tier in the analysis requires a court to apply the three criteria used to determine whether a practice constitutes "the business of insurance" for purposes of the McCarran–Ferguson Act. 15 U.S.C. § 1011–1015. Those criteria are: *"First,*

whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Dedeaux*, 481 U.S. at 48–49, 107 S.Ct. at 1553–54 (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)) (emphasis in original).

In this case, using the common-sense meaning of the savings clause, the court finds that section 287.088 is not specifically directed toward the insurance industry. Indeed, the statute is directed not toward insurers at all but rather toward employers, specifically contractors and subcontractors who seek the award of state contracts. The statute is codified in Title XIX, Florida Statutes, entitled "Public Business." As part of Title XIX, Chapter 287 is entitled "Procurement of Personal Property and Services." Significantly, section 287.088 is *not* codified in Title XXXVII, Florida Statutes, entitled "Insurance." While section 287.088 may cause some state contractors to obtain insurance coverage for their employees, thereby affecting the insurance industry indirectly, the statute in no way regulates the insurance industry directly. Section 287.088, therefore, fails the first tier of the savings clause analysis and is not saved from preemption.

■ Even assuming *arguendo* that section 287.088 survived the first tier of the test, the court finds that the statute fails the second tier of the savings clause analysis as well. The reach of the statute, for example, is not "limited to entities within the insurance industry." *Dedeaux*, 481 U.S. at 49, 107 S.Ct. at 1553. The statute, in fact, targets employers rather than insurers. Section 287.088 thus fails to satisfy the third McCarran–Ferguson criterion.

Section 287.088 also fails to satisfy the second McCarran–Ferguson criterion. The statute directly affects the relationship between the State of Florida and those employers who seek state agency contracts not only because it requires the employers to do certain things before the State will award them

contracts and but also because it authorizes the State to impose penalties upon those employers who are awarded contracts but who later fail to comply with the statute. The statute indirectly affects the relationship between state contractors and their employees because, *if* the contractors want to be awarded state agency contracts, they must ensure that their employees have access to hospitalization and medical insurance benefits. The statute may tangentially affect the relationship between state contractors and insurers because the contractors may choose to comply with the statute by negotiating with insurers to provide a plan for their employees. The statute may coincidentally affect the policy relationship between insurers and their insureds because the statute may enable some employees to obtain hospitalization and health insurance coverage that they were unable to obtain before. The statute does *not*, however, play such an "*integral* part of the policy relationship between the insurer and the insured" as to constitute the "business of insurance." *Dedeaux,* 481 U.S. at 48–49, 107 S.Ct. at 1553–54.

Contrary to the defendants' suggestions, the court is not persuaded that this case is controlled by *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The statute at issue in *Metropolitan Life* required *insurers* to provide specified minimum mental health-care benefits to Massachusetts residents insured under a general insurance policy, an accident or sickness insurance policy, or an employee health-care plan covering hospital and surgical expenses. Unlike the statute at issue here, the Massachusetts statute was specifically directed to the insurance industry. Indeed, it sought to directly regulate an integral part of the relationship between the insurer and the policyholder by limiting the type of insurance than an insurer could sell to the policyholder. Also unlike section 287.088, the Massachusetts law imposed requirements *only* on insurers. According to the Supreme Court, the Massachusetts statute was quite clearly a law regulating the terms of insurance contracts; it was, in other words, the very type of law that Congress intended to be saved from preemption by operation of the insurance savings clause.

The same cannot be said about section 287.088.

### III. *SUMMARY*

It may seem surprising that a federal statute, enacted in part to protect workers, should preempt a state statute that has worker protection as one of its primary goals. The result may be surprising but the explanation is clear: By preventing states from imposing different obligations upon employers, Congress—through ERISA—has allowed each employer to create one uniform employee welfare benefit plan, a plan that is governed by one set of rules and a plan that is acceptable in all jurisdictions where the employer operates.

Surely, in enacting section 287.088, the Florida Legislature intended to address a problem that plagues states nationwide. Without doubt, its intent was laudable. Nonetheless, the Florida Legislature devised a law, section 287.088, that relates to ERISA-covered plans. Section 287.088 thereby intrudes upon ERISA's sphere—a sphere that Congress has made a matter of exclusive federal concern. Section 287.088, therefore, is subject to preemption under Title 29, United States Code, Section 1144(a).

Accordingly, it is ORDERED:

1. It is hereby DECLARED that section 287.088, Florida Statutes, is preempted by the Employee Retirement Income Security Act of 1974, Title 29, United States Code, Section 1144(a).

2. Defendants are ENJOINED from enforcing section 287.088.

3. The clerk shall enter judgment in favor of Plaintiffs pursuant to Rule 58, Federal Rules of Civil Procedure.

4. Costs shall be taxed against the Defendants.

DONE AND ORDERED.