**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY, a Corporation, Plaintiff-Appellant,**

v.

**Linda Ann DIGREGORIO, Defendant-Appellee.**

No. 85–2831.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 1, 1986.

Decided March 2, 1987.

Robert H. Roe, San Francisco, Cal., for plaintiff-appellant.

Michael F. O'Leary, San Francisco, Cal., for defendant-appellee.

Before SNEED, KENNEDY and BEEZER, Circuit Judges.

SNEED, Circuit Judge:

Transamerica Occidental Life Insurance Company (Transamerica) brought suit in federal court pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, for a declaration that its policy did not provide double indemnity to a particular beneficiary. The district court dismissed on the ground that it lacked subject matter jurisdiction or, alternatively, that it had discretion to defer to pending state court litigation. Transamerica appeals. We hold that there was federal jurisdiction but affirm on the alternative ground.

## I.

### FACTS

An employee of the Bank of America died of heat stroke. The bank's employee welfare plan included a life insurance policy worth some $50,000, with double indemnity in the event of death by "external, violent, and accidental means." Transamerica, the insurer, paid the decedent's estate single coverage, denying that the double indemnity clause applied to heat stroke. Defendant, the decedent's daughter and successor to the estate, threatened to sue; Transamerica responded by seeking

a declaratory judgment in federal district court. About one month later, defendant filed suit in state court. Her complaint raised exclusively state law claims, including an action for bad faith. She then successfully moved in the district court to dismiss Transamerica's action.

## II.

### SUBJECT MATTER JURISDICTION

This is not a simple case. That this is so is a tribute to the intricate interplay of federal and state laws, including those fixing the jurisdiction of federal and state courts. What ought to be a fairly simple problem of interpreting an insurance policy turns out to be a complex case requiring the analysis of complicated statutes and the subtle distinctions that might be drawn between numerous judicial opinions. Reflection prompts this thought. Federalism within the United States is passing from the realm of common understanding to that of lawyers and judges, and even our grip on its meaning may be slipping. No one is to blame; it is just happening.

### a. *Section 502(a)(3)*.

Transamerica bases its claim to a federal forum on section 502(a)(3) of ERISA,[1] which permits an ERISA fiduciary to bring a civil action:

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) *to enforce*

any provisions of this subchapter or *the terms of the plan.*

29 U.S.C. § 1132(a)(3) (emphasis added). The parties have been helpful and have stipulated that the bank's welfare plan is an ERISA plan, and that Transamerica is a fiduciary thereof. Transamerica argues that its action seeks "equitable relief ... to enforce" the terms of this plan, which entitles it to be in federal court. Transamerica points to the settled law that section 502(a)(3)(B) can be the jurisdictional basis for some declaratory judgment actions. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 26–27, 103 S.Ct. 2841, 2855, 77 L.Ed.2d 420 (1983). The issue, however, is whether Transamerica's suit is an action either to obtain "equitable" relief or to "enforce" the terms of the plan.

A declaratory judgment does not necessarily constitute a form of "equitable" relief. "[D]eclaratory relief is neither strictly equitable nor legal...." E. Borchard, *Declaratory Judgments* 399 (2d ed. 1941); *e.g., Hartford Fin. Sys. v. Florida Software Servs.,* 712 F.2d 724, 727 & cases cited (1st Cir.1983); *see* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2769, at 758 (1983) [hereinafter *Wright & Miller* ]. A particular declaratory judgment draws its equitable or legal substance from the nature of the underlying controversy. *Pacific Indem. Co. v. McDonald,* 107 F.2d 446, 448 (9th Cir.1939); *see Wallace v. Norman Indus.,* 467 F.2d 824, 827 (5th Cir.1972). Defendant's contractual claim to benefits, the source of Transamerica's case, is clearly a legal one.[2] Had Transamerica's suit gone

---

**1.** We hold below that the district court had federal question jurisdiction over this case pursuant to the Declaratory Judgment Act. The reason we first consider Transamerica's argument for section 502(a)(3) jurisdiction is that such jurisdiction is exclusively federal. 29 U.S.C. § 1132(e)(1). If the district court had *exclusive* jurisdiction over Transamerica's suit, our analysis of its decision to abstain in favor of state court litigation might have been different. *Cf. Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983) (suggesting that abstention may never be proper in section 502(a)(3) cases).

**2.** In some cases, actions by ERISA beneficiaries to recover benefits are equitable for jury trial purposes. *See, e.g., Turner v. CF & I Steel Corp.,* 770 F.2d 43, 47 (3rd Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). But these cases involve pension suits against plan trustees, and their holdings turn on trust law rules under which such suits were previously heard in equity. *See id.* at 46–47. In such cases, the question presented is whether the trustee's conduct or interpretation of his duties was arbitrary or capricious, a question traditionally for judges rather than juries. *See id.* at 46; *Calamia v. Spivey,* 632 F.2d 1235, 1237 (5th Cir.1980). Where an ERISA action is not of this

to trial, defendant could have demanded a jury. *See, e.g., Hartford Fire Ins. Co. v. Herrald,* 483 F.2d 425, 426 (9th Cir.1973) (per curiam). Not so, generally speaking, were it an equitable action. Transamerica's suit essentially presents a legal claim, albeit an inverted one.

Moreover, even if all declaratory judgments were considered "equitable" in nature, at least for the purposes of section 502(a)(3), we would still hold that Transamerica is not seeking to "enforce" the terms of its plan. A declaratory judgment may be said to "enforce" ERISA or the terms of an ERISA plan where it seeks to establish the primacy of an ERISA obligation over some independent, potentially conflicting federal or state law duty. Thus in *Franchise Tax Board,* the Court stated that section 502(a)(3)(B) authorized "a declaratory judgment action in federal court to determine whether the plan's trustees may comply with a state levy on funds held in trust." 463 U.S. at 27, 103 S.Ct. at 2855; *see also United Food & Commercial Workers Trust v. Pacyga,* 801 F.2d 1157 (9th Cir.1986) (jurisdiction assumed without discussion; declaration sought by fiduciary that state anti-subrogation law did not apply to ERISA insurance plan specifically calling for subrogation in some circumstances). A declaratory judgment might also be sought to "enforce" an ERISA term by establishing that the party against whom it is brought is charged with carrying out an ERISA duty which that party is allegedly disregarding. *See, e.g., Pacyga,* 801 F.2d at 1159 (beneficiary allegedly had obligation under plan that she sought to avoid). The instant case fits neither of these categories.

The truth of the matter is that Transamerica seeks a federal forum to interpret its contract. It seeks to clarify its obligations as an insurer, not to uphold its ERISA obligations in the face of a competing, independent duty. Nor does the defendant, the beneficiary, have ERISA obligations that this suit seeks to have her fulfill. We are not the first court to draw a distinction between an insurer's suit to interpret its policy and an action "to enforce" an ERISA term within the special authorization of section 502(a)(3)(B). *See Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 153–54 (3d Cir.1985) (holding that an ERISA insurer's declaratory suit seeking a favorable interpretation of a standard policy clause, against a party having no obligations under the plan, was not an action to "enforce" the plan terms).

The statutory language preceding section 502(a)(3) fortifies our conclusion. In subsection (a)(1), Congress authorizes an ERISA participant or beneficiary, *but not a fiduciary,* to bring suit

> (B) to recover benefits due to him under the terms of his plan, *to enforce* his rights under the terms of the plan, *or to clarify* his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B) (emphasis added). Congress has distinguished here between *enforcement* and *clarification* of rights. If required to choose between clarification and enforcement, we would characterize Transamerica's suit as one seeking clarification.

---

pension-trust type, these cases do not apply. *See Bugher v. Feightner,* 722 F.2d 1356, 1360 (7th Cir.1983), *cert. denied,* 469 U.S. 822, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984). Here, no deference would be owing to Transamerica's construction of its own policy's terms. Furthermore, DiGregorio has a legal remedy against Transamerica for money immediately and unconditionally payable. Restatement (Second) of Trusts § 198 (1958); *see Wardle v. Central States, Etc.,* 627 F.2d 820, 829 & n. 19 (7th Cir.1980). As against Transamerica, defendant's claim for benefits sounds essentially in contract, not in trust. It is no less legal in nature simply

because the policy was purchased pursuant to an ERISA plan.

We reenter the legal/equitable morass in this case with no alacrity. We must note, however, that Congress expressly considered a version of section 502(a) that would have authorized suits for "legal or equitable" relief, but ultimately chose only to permit the latter. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). And the Supreme Court has counseled us to take section 502(a) "as finally enacted" strictly at its word. *Id.* at 146, 105 S.Ct. at 3093.

The defendant, on the other hand, could have sued under the provisions of subsection (a)(1)(B). *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). According to section 502(e)(1), she would have been permitted to bring this action in state or federal court, whereas Transamerica's suit, were it to fall within section 502(a)(3), could be heard only in federal court. *See* 29 U.S.C. § 1132(e)(1). This strongly suggests that section 502(a)(3) should be construed against permitting an insurer to transform a case over which Congress has authorized state court jurisdiction, when the insured seeks recovery, into a case over which there is only federal court jurisdiction, when the insurer sues. Standard policy terms such as Transamerica's double indemnity clause—even though the clause happens to figure in an ERISA plan—implicate no federal interests of such gravity as to warrant exclusive federal interpretation.

We hold, therefore, that Transamerica's suit does not fall within the ambit of section 502(a)(3).

### b. *Declaratory Judgment Act.*

■ Nevertheless, we conclude that the district court erred in determining that it lacked subject matter jurisdiction. We find that jurisdiction was plainly available by way of the Declaratory Judgment Act, 28 U.S.C. § 2201. This follows from the fact that to ascertain the presence of federal jurisdiction in a declaratory judgment action, it is necessary to determine whether the defendant against whom declaratory judgment is sought could have asserted his rights in a federal court. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). "If ... the declaratory judgment defendant could have brought a coercive action in federal court to enforce its

rights, then we have jurisdiction...." *Janakes v. United States Postal Serv.,* 768 F.2d 1091, 1093 (9th Cir.1985). As noted above, defendant's claim to double indemnity benefits is at the heart of this case, and ERISA would have permitted her to sue on this claim in federal court.[3] Thus the district court without doubt had federal question jurisdiction to hear Transamerica's suit.

### III.

### *ABSTENTION*

■ We now must turn to the question of whether the district court could refuse to exercise its jurisdiction. We hold that it could.

The defendant chose to sue in state court even though the federal forum was open to her. This court has long held that a district judge has discretion to decline jurisdiction in favor of pending state court litigation when a party seeks to use the Declaratory Judgment Act to deprive a plaintiff of his choice of forum or to encourage a race to judgment. *E.g., Shell Oil Co. v. Frusetta,* 290 F.2d 689, 692 (9th Cir.1961) (*Shell Oil*); *H.J. Heinz Co. v. Owens,* 189 F.2d 505, 508 (9th Cir.1951), *cert. denied,* 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677 (1952); *see Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 185–86, 72 S.Ct. 219, 222, 96 L.Ed. 200 (1952); *Hanes Corp. v. Millard,* 531 F.2d 585, 592–93 (D.C.Cir. 1976). Despite the longevity of this rule, our decision in *Mobil Oil Corp. v. City of Long Beach,* 772 F.2d 534 (9th Cir.1985), suggests questions about its vitality.

In *Mobil Oil,* the panel reversed a district judge's abstention in a declaratory judgment action. The court stated that reliance on *Shell Oil* and indeed on any

---

**3.** Although not strictly necessary to its holding, the court in *Janakes* further stated that the hypothetical federal coercive action "must 'arise under' federal law, and not be based merely on diversity of citizenship or another, nonsubstantive jurisdictional statute." 768 F.2d at 1093. Section 502(a)(1)(B) actions do arise under federal law. *See Menhorn v. Firestone Tire & Rub-*

*ber Co.,* 738 F.2d 1496, 1498 (9th Cir.1984). This is not to say that ERISA has preempted state law claims for insurance benefits, an issue we do not reach here. *See infra* note 5. Defendant *could* have sued under federal law even if her state law action is not preempted. That is all our jurisdictional analysis requires.

pre–1976 cases touching this point "may be hazardous." 772 F.2d at 541. The reason given was that the Supreme Court's decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), had severely curtailed the district courts' discretion to defer to state litigation in most kinds of cases, including declaratory judgment actions. *Mobil Oil*, 772 F.2d at 542. Abstention under *Colorado River* is permissible only in "exceptional" circumstances. *See* 424 U.S. at 818, 96 S.Ct. at 1246.

*Mobil Oil*, however, must be applied circumspectly. It did not discuss post-*Colorado River* authority that has continued to support the district courts' special jurisdictional discretion as to declaratory judgment suits independent of the *Colorado River* analysis. *See, e.g., Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599,

601–02 & nn. 1 & 3 (5th Cir.1983) (holding that the "exceptional circumstances" test does not apply to declaratory judgment actions); 10A *Wright & Miller & Kane, supra,* § 2759, at 651; 6A J. Moore, *Federal Practice* ¶ 57.08[5] (1986). Nor did the *Mobil Oil* court discuss the indications in post-*Colorado River* Supreme Court opinions that jurisdiction over declaratory judgment actions requires a different analysis.[4] Nor, finally, did the panel in *Mobil Oil* acknowledge our own post–1976 cases reiterating the well-settled rule. *See Fern v. Turman*, 736 F.2d 1367, 1370 (9th Cir.1984), *cert. denied*, 469 U.S. 1210, 105 S.Ct. 1177, 84 L.Ed.2d 326 (1985); *Geni-Chlor Int'l, Inc. v. Multisonics Dev. Corp.*, 580 F.2d 981, 985 (9th Cir.1978).

Whatever may be the reach of *Mobil Oil*, abstention in this case has congressional support. Congress has expressly provided ERISA beneficiaries with the choice be-

---

**4.** In *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), a sharply divided Court revisited abstention doctrine. Although *Calvert* was not a declaratory judgment case, four justices favoring abstention relied principally on *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), which *was* a declaratory judgment case, and which held that the district court "was under no compulsion to exercise [its] jurisdiction." *See* 437 U.S. at 662–64, 98 S.Ct. at 2557–58 (opinion of Rehnquist, J.). Four other justices, voting against abstention, stated that *Brillhart* was "completely inapposite" to *Colorado River* analysis because "federal jurisdiction over declaratory judgment suits is discretionary." *Id.* at 670–72, 98 S.Ct. at 2561–62 (Brennan, J., dissenting) (citing cases and the language of the Declaratory Judgment Act). Both opinions, therefore, support the limited proposition that *Brillhart* survives *Colorado River* and authorizes jurisdictional discretion in Declaratory Judgment Act suits. *See also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 18 n. 20, 103 S.Ct. 927, 937, n. 20, 74 L.Ed.2d 765 (1983) (suggesting that the "defensive" or "reactive" nature of a federal declaratory judgment suit could be a ground for abstention independent of the *Colorado River* exceptional circumstances analysis).

It is true, as the *Mobil Oil* court pointed out, that "*Colorado River* itself involved a complaint for declaratory relief." 772 F.2d at 542. But the suit in *Colorado River* was for an adjudication of water rights. Neither the appellate court nor the Supreme Court mentioned the Declara-

tory Judgment Act, because the federal courts' power to declare real property rights is independent of the Declaratory Judgment Act. The Supreme Court itself, exercising its original jurisdiction, entertained cases to adjudicate territorial disputes well before passage of the Act in 1934, even though these were "actions for a declaratory judgment in everything but name." E. Borchard, *supra*, at 142 n. 20. In such cases decided after 1934, as in *Colorado River*, the Court makes no reference to the Declaratory Judgment Act as the source of its authority. *See, e.g., Arkansas v. Tennessee*, 310 U.S. 563, 60 S.Ct. 1026, 84 L.Ed.2d 1362 (1940). Thus the fact that the United States sought a declaration of water rights in *Colorado River* does not mean that the case arose pursuant to the Declaratory Judgment Act. We have called a similar suit an action to "quiet title," *California v. United States*, 235 F.2d 647, 652 (9th Cir.1956), and the Supreme Court has referred to suits for "equitable apportionment" or "judicial apportionment" of disputed water rights, *Idaho v. Oregon*, 444 U.S. 380, 381, 100 S.Ct. 616, 618, 62 L.Ed.2d 564 (1980); *Arizona v. California*, 298 U.S. 558, 560, 56 S.Ct. 848, 850, 80 L.Ed. 1331 (1936). Whatever the proper denomination, it is at least clear that the *Colorado River* Court did not consider that case to be a Declaratory Judgment Act suit. Otherwise the four dissenters in *Calvert* (all of whom were members of the six-justice *Colorado River* majority) would not have distinguished the "discretionary" federal jurisdiction over declaratory judgment suits from the "non-discretionary" federal jurisdiction to which *Colorado River* applies. *See Calvert*, 437 U.S. at 671–73, 98 S.Ct. at 2561–62 (Brennan, J., dissenting).

tween a state or federal forum in their actions to recover benefits. If a district court generally were compelled to hear an ERISA insurer's declaratory suit, the insurer would be able to circumvent the beneficiary's choice of a state forum in every ordinary case on the insurance contract. We do not believe that Congress intended that result. We hold that in this type of case, notwithstanding *Mobil Oil,* district courts retain discretion to decline jurisdiction over a defensive declaratory judgment suit.[5]

In this case, the district court's exercise of its discretion was proper. All issues raised in Transamerica's suit may be fully litigated in state court. Moreover, many of the issues raised in the state action—e.g., those relating to the beneficiary's state law bad faith claims—are more appropriate for state court resolution. No compelling federal interests are at stake, the federal action was not too far advanced, and Transamerica does not face any danger of potentially conflicting obligations.

It can be argued that federal common law should govern the interpretation of Transamerica's double indemnity clause. We express no opinion on this issue. Even were federal law to govern, however, district courts in this context would not be required to view the source of law as the dispositive factor with respect to abstention. This follows from Congress's express authorization of state court jurisdiction. As we have previously observed,

> [a]ctions to recover benefits or enforce rights under the terms of a plan will

typically involve the application of those general principles of contract law with which the state courts have had substantial experience before ERISA; their expertise qualifies them to evaluate these rules in the light of ERISA's policies and apply federal common law.

*Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1500 n. 2 (9th Cir.1984).

Here abstention was permissible.

AFFIRMED.

---

**5.** We intimate no opinion as to the propriety of removal by the insurer to federal court. By giving ERISA beneficiaries their choice of a state or federal forum, Congress did not preclude removal in cases brought under ERISA section 502(a)(1). *See Clorox Co. v. United States Dist. Ct.,* 779 F.2d 517, 521 (9th Cir.1985). Nevertheless, the possibility of removal to federal court does not require that the insurer be permitted to become complete master of the insured's claim through a declaratory judgment action filed in the federal district court of the insurer's choice. *Cf.* 6A J. Moore, *supra,* ¶ 57.19 at 57–207 (advising against allowing insurers to circumvent the insured's choice of forum via a declaratory judgment action).

Moreover, it remains an open question in this circuit whether an ERISA beneficiary seeking to recover on an insurance policy in state court can rest on state law claims and thereby avoid removal. *See Takeda v. Northwestern Nat'l Life Ins. Co.,* 765 F.2d 815, 822 & n. 10 (9th Cir.1985) (reserving this question); *cf. Taylor v. General Motors Corp.,* 763 F.2d 216, 219 (6th Cir.1985) (state law action for insurance benefits under an ERISA plan could not be removed), *cert. granted,* 106 S.Ct. 1182 (1986). We need not resolve here whether ERISA has preempted defendant's state law claims. As we have observed elsewhere, the state courts are perfectly competent to decide this issue. *See Takeda,* 765 F.2d at 822 n. 10.