RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2000 FED App. 0216P (6th Cir.)
File Name: 00a0216p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

NGS AMERICAN, INC.,
      *Plaintiff-Appellant,*

    *v.*

MICKEY JEFFERSON,
representative of Estate of
Bernetta Jefferson, Deceased;
ANDREW JEFFERSON and
STEPHAN LAMB, minors, by
their guardian, Mickey
Jefferson; and MICKEY
JEFFERSON, individually,
      *Defendants-Appellees.*

No. 98-2209

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-76208—Bernard A. Friedman, District Judge.

Argued: December 9, 1999

Decided and Filed: July 5, 2000

Before:  BOGGS and SUHRHEINRICH, Circuit Judges;
and POLSTER*, District Judge.

_____

**COUNSEL**

_____

**ARGUED:**  Ronald S. Longhofer, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellant. Jonathan M. Pavsner, LAW OFFICES OF SHELDON J. SCHLESINGER, Ft. Lauderdale, Florida, for Appellee. **ON BRIEF:**  Ronald S. Longhofer, Raymond M. Kethledge, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellant.   Jonathan M. Pavsner, LAW OFFICES OF SHELDON J. SCHLESINGER, Ft. Lauderdale, Florida, for Appellee.

_____

**OPINION**

_____

   BOGGS, Circuit Judge.  NGS American, Inc., ("NGS") is a Michigan-based, third-party administrator of the Flint Ink Corporation Employees Group Medical Benefit Plan ("the Plan") in Florida.  Mickey Jefferson's wife Bernetta received services as a beneficiary under the Plan.  She died in the hospital two weeks after giving birth to the Jeffersons' son, of a condition that Mickey Jefferson claims was readily detectable and treatable.  On November 19, 1997, Jefferson served NGS and the health care providers who he claims were responsible for his wife's death with a pre-suit Notice of Intent to Initiate Litigation, as required by Florida state law in

_____
   *The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

medical malpractice lawsuits.[1] The notice informed NGS of the imminent suit for failure to monitor and treat appropriately, failure to diagnose the patient's true condition, and for discouraging the health care providers from incurring costs for necessary treatment.

Apparently energized by that notice, NGS brought suit against Jefferson in federal court in Michigan on December 23, 1997, seeking a declaration that any state-court claims would be preempted under 29 U.S.C. § 1144, the Employee Retirement Income Security Act preemption provision. Jefferson filed suit in Dade County, Florida, court in January 1998. Because Florida law requires a 90-day waiting period between giving notice and filing suit in medical malpractice cases, NGS brought suit in federal court before Jefferson could legally file his state court action.[2] Jefferson moved to dismiss NGS's action for lack of personal jurisdiction, because he lives in Florida and has no ties to Michigan. NGS responded that the ERISA nationwide service of process provision suffices to establish personal jurisdiction in an action to enforce ERISA's preemption provision.[3]   The

---

[1] "After completion of presuit investigation pursuant to § 766.203 and prior to filing a claim for medical malpractice, a claimant shall notify each prospective defendant . . . of intent to initiate litigation for medical malpractice." FLA. STAT. ANN. § 766.106(2) (West 1996).

[2] "No suit may be filed for a period of 90 days after notice is mailed to any prospective defendant." FLA. STAT. ANN. § 766.106(3)(a) (West 1996). Alternatively, Jefferson could have filed suit as soon as NGS notified him in writing that it rejected his claim, but since NGS filed suit in federal court on the same day it notified Jefferson that it was rejecting his claim, that option was effectively foreclosed. *See* FLA. R. CIV. P. 1.650(d)(2).

[3] ERISA's nationwide service of process provision, 29 U.S.C. § 1132(e)(2), states: "Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

district court held a hearing and ordered supplemental briefing on an issue raised therein. Both parties complied, and NGS also filed an Amended Complaint seeking an injunction barring prosecution of Jefferson's state-court claims in addition to declaratory relief.

In a September 30, 1998 order, the district court held that § 1132(e)(2) does not apply to NGS's case and dismissed it for lack of personal jurisdiction. The question presented on appeal is whether the district court erred in deciding that ERISA's nationwide service of process provision does not suffice to establish personal jurisdiction over Jefferson in this case. NGS asserts that it is a fiduciary, and that its action seeking injunctive and declaratory relief has been brought under § 1132(a)(3) to enforce 29 U.S.C. § 1144, which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C. § 1144(a). Jefferson responds that NGS's status as an ERISA fiduciary and the existence of an employee benefit plan governed by ERISA have not been proven. Jefferson also denies that § 1132(a)(3) authorizes NGS's action and notes that NGS has raised the ERISA preemption issue in its motion to dismiss the Florida lawsuit, which the state court has stayed pending the resolution of this appeal.

This court reviews *de novo* the district court's dismissal for lack of personal jurisdiction. *See Nationwide Mut. Life Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). Since we ultimately conclude that the district court lacked jurisdiction over Jefferson, we merely assume for purposes of analysis that NGS is a fiduciary and that ERISA governs Jefferson's benefit plan. Because we agree with the district court that NGS's action in no way enforces an ERISA provision and is not "an action under this subchapter" to which personal jurisdiction might attach, we affirm.

## I

As an initial matter, we note that federal courts frown upon declaratory judgment actions brought for procedural fencing

jurisdiction over Jefferson that it would need in order to decide the underlying ERISA preemption question on the merits. That question will have to be decided in state court, or perhaps in a federal forum that has personal jurisdiction over Jefferson. Whether or not this case may proceed to a decision on the merits in state court will depend upon whether Jefferson's claims are completely preempted (and thus removable), whether preemption is just a defense (and thus not a basis for removal), or whether they are not preempted at all. *See In re U.S. Healthcare, Inc.*, 193 F.3d 151 (3d Cir. 1999). Whichever is the case, an action for injunctive and declaratory relief in Michigan federal district court to decide the removal question is inappropriate.

The district court correctly determined that it lacks personal jurisdiction in this case, though the complete reason is a bit more complicated than that given by the district court. NGS asserts that personal jurisdiction exists by way of a nationwide service of process provision in the statute under which it brings its action. However, the action NGS has brought purports to enforce the preemption provision of that same statute. The § 1144 preemption provision itself does not create a federal cause of action. Enforcing preemption may become a federal cause of action under some circumstances, but not here. Mickey Jefferson has done nothing to violate ERISA by filing suit in Florida state court, so NGS American's action against him cannot be construed to enforce ERISA. Therefore, the judgment of the district court is AFFIRMED.

Even if NGS is right that the state law upon which Jefferson bases his suit is preempted by § 1144, that only provides NGS a defense to be raised in state court, not a basis for federal jurisdiction, and thus not a basis for removal:

Removal and preemption are two distinct concepts. "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted"—for example under § 1144(a)—"does not establish that they are removable to federal court." The federal preemption defense in such nonremovable cases would be decided in state court and would be subject to review on certiorari in the U.S. Supreme Court.

*Warner*, 46 F.3d at 535, *citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398 (1987); *see also Zuniga v. Blue Cross and Blue Shield of Mich.*, 52 F.3d 1395, 1398-99 (6th Cir. 1995) (applying *Warner*); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990) (holding a state law claim to have been completely preempted upon taking the case by certiorari from the Texas Supreme Court).

Thus in no way would NGS's suit for injunctive and declaratory relief "to enforce § 1144" ever justify enjoining the state proceeding. Indeed, the state proceeding is where the § 1144 ERISA preemption question will ordinarily be determined. Even if Jefferson's state court action is completely preempted by ERISA, so that a state court's insistence upon hearing the claim would be a jurisdictional error and not merely a failure to apply the correct case law, NGS's claim in federal court would not be an action "to enforce § 1144." It would be an action to enforce the implicit preemption of § 1132(a). And, even then, seeking removal would be the proper way for NGS to defend its rights under federal law.

## III

NGS's current action is not brought under ERISA. The nationwide service of process provision is thus not implicated, and the district court did not have the personal

purposes. *See Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990) (listing 'procedural fencing' and providing 'an arena for a race for res judicata' as factors to consider in declining to render a prayed-for declaration); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir. 1978) ("When the declaratory judgment action has been triggered by a notice [of suit] letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum"); *Sturge v. Diversified Transp. Corp.*, 772 F. Supp. 183, 186 (S.D.N.Y. 1991) (dismissing without prejudice an action filed by underwriters seeking declaration of no liability under an oil spill clean-up policy, where the contractors' giving notice of suit in state court to the underwriters triggered the action's filing, and the claims were essentially defenses assertable in state court); *Dresser Indus., Inc. v. Insurance Co. of North Am.*, 358 F. Supp. 327, 330 (N.D. Tex. 1973) (noting that the Declaratory Judgment Act affords a new form of relief *where needed*, not a new choice of tribunals or the ability to draw into federal courts the adjudication of causes properly cognizable by state courts) (emphasis added); *First Fed. Sav. & Loan Ass'n of Bowling Green, Ky. v. McReynolds*, 297 F. Supp. 1159, 1161 (W.D. Ky. 1969) (noting that the Declaratory Judgment Act does not permit a party to invoke the jurisdiction of the federal courts by simply commencing a declaratory-judgment action before the other party is able to commence its nonremovable coercive action in state court). *See generally*, 10A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2758 (3d ed. 1998); 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 57.42[3] (3d ed. 1997).

In essence, NGS seeks a federal forum for determination of the ERISA preemption issue in the underlying state-court case. Even if NGS were entitled to a federal forum as a matter of law, its manner of vindicating that right is not immaterial. Removal is the standard method to seek the hearing of a federal claim in a federal rather than a state court. NGS purports to enforce ERISA preemption via its action for injunctive and declaratory relief, but such relief could only

ever be appropriate when removal is mandatory (if then). Thus, NGS effectively seeks a removal determination in a forum other than "the district court of the United States for the district and division within which [the state court] action is pending" in contravention of the federal removal statute. 28 U.S.C. § 1446(a). That is procedural fencing taken to the extreme. Although the Eighth Circuit has entertained a declaratory action similar to the one brought by NGS, personal jurisdiction was not at issue there, the court was the same in which removal would be sought, and the court determined that the plaintiff's action did not represent "an improper use of the declaratory judgment to seek a favorable forum." *Prudential Ins. Co. of Am. v. Doe*, 140 F.3d 785, 790 (8th Cir. 1998) ("*Doe II*"). *But see International Assoc. of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995) (refusing to issue a declaratory judgment after an unsuccessful removal attempt and holding that "the Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action").

Without pretending to divine the motives of NGS in bringing this action where it did, this court may nevertheless take note that a rule permitting the action could frustrate a plaintiff's choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent in litigation. NGS intimates that Congress has already permitted any such ill effects because ERISA provides for injunctive relief (explicitly) and declaratory relief (implicitly). The extent of such provision remains to be determined, but we expect Congress would more clearly indicate that a statute impinges on removal jurisdiction than it has in ERISA's text, especially where an interpretation allowing such impingement raises further questions about the scope of the Anti-Injunction Act and abstention under *Younger* and its progeny. *See* 28 U.S.C. § 2283; *Younger v. Harris*, 401 U.S. 37 (1971); *see*

*Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995) (en banc). The ERISA provision that NGS purports to be enforcing is § 1144, a provision that this court has determined "does not create a federal cause of action itself." *Ibid*. It would thus be anomalous if an action to enforce § 1144 were a federal cause of action. Given that Jefferson's bringing a state court suit does not violate § 1144, NGS's action to block that suit cannot enforce § 1144.

For similar reasons, the Seventh Circuit has held that a fiduciary's declaratory suit does not enforce ERISA. In that case, an employer sought a declaratory judgment that an employee was not entitled to a disability pension governed by ERISA. The employee sought a counter-declaration that he was so entitled. Although it deemed the employer (as plan administrator) a fiduciary for purposes of § 1132(a)(3), the court noted that the fiduciary was "not seeking to 'enforce' any provision of ERISA or the Plan. [The employee], a would-be pensioner, [wa]sn't violating the Plan or ERISA, so there [was] nothing to 'enforce' against him." *Massey-Ferguson*, 51 F.3d at 103. The same may be said of NGS's suit in this case. Jefferson has not violated the Plan or ERISA by merely filing suit, so there is nothing for NGS to enforce under the aegis of § 1132(a)(3).

Florida state courts are competent to decide whether ERISA has preempted Jefferson's state law claims. Neither the nationwide service of process provision, § 1132(e)(2), nor the ERISA preemption provision, § 1144, precludes state court adjudication of a § 1144 ERISA preemption defense. State courts lack jurisdiction to adjudge ERISA cases on the merits, and thus removal is mandatory, only when the state law claims are completely preempted under § 1132. *See Warner*, 46 F.3d at 535; *Parra v. John Alden Life Ins. Co.*, 22 F. Supp. 2d 1360, 1363 (S.D. Fla. 1998). If ERISA does not prohibit the *filing* of preempted claims in state court, then injunctive and declaratory relief against those state court proceedings is not available under ERISA.

prevent an award against it under preempted Florida law" (NGS's brief at 14). The question in *Thiokol* was whether the plaintiff's action for declaratory and injunctive relief came under § 1132(a)(3). The district court had determined that it lacked jurisdiction to decide whether ERISA preempted a state tax law. This court reversed, holding that the district court had jurisdiction under § 1132(a)(3). *Thiokol* is not controlling as to whether the instant action comes under § 1132(a)(3). Though actions for similar relief, personal jurisdiction was not at issue in *Thiokol* and the action in that case was brought to determine the effect of ERISA preemption on existing state regulations. Challenging those regulations by violating them and then raising ERISA preemption as a defense in a state enforcement action would have risked breaking the law. NGS does not face a similar dilemma in the present case, because it is questioning the permissibility of a private cause of action brought under state law rather than the enforceability of an existing state regulation. Unlike *Thiokol*, the only harm in denying injunctive and declaratory relief here is to force NGS to raise its preemption claim in state court, or to seek removal to federal district court in Florida.

### C. Complete Preemption and Suits to Enforce the Preemptive Effect of § 1144

On its face, § 1144 does not prohibit filing a state law claim preempted by ERISA in state court, nor does it seem readily enforceable by injunctive or declaratory relief. As the district court noted, many other parts of the ERISA statute lend themselves to ready enforcement by injunction or declaratory action:

> [M]any "provisions of this subchapter" [including §§ 1021-1027 and §§ 1052-53] lend themselves to "enforcement" in an action brought under 29 U.S.C. § 1132(a)(3) because they place specific duties on specific persons. Section 1144(a), by contrast, does not.

Moreover, state courts clearly have concurrent jurisdiction over ERISA cases that are not completely preempted. *See*

*also Juidice v. Vail*, 430 U.S. 327 (1977) (extending *Younger* to all federal civil proceedings).[4]

Some courts have taken the abstention route to thwart procedural fencing in the ERISA context. *See Prudential Ins. Co. of Am. v. Doe*, 76 F.3d 206, 210 (8th Cir. 1996) ("*Doe I*") and *Doe II*, 140 F.3d at 789 (holding that the Declaratory Judgment Act provided jurisdiction for a declaratory action even if ERISA did not and noting that the district court could consider *Brillhart* abstention on remand of an ERISA declaratory action); *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249 (9th Cir. 1987) (holding that the district court lacked jurisdiction under ERISA, had discretionary jurisdiction under the Declaratory Judgment Act, but was permitted to abstain under *Brillhart*). Personal jurisdiction was not at issue in these cases, however, so the courts of appeals had the advisability of *Brillhart* abstention before them, which we do not, and they were not using abstention to avoid determining whether they had personal jurisdiction over a party, which we would be. Here, NGS premises its case on personal jurisdiction under ERISA, because it cannot, in the first instance, invoke the Declaratory Judgment Act, which only extends a new remedy to cases already "within [a court's] jurisdiction," as a basis for the district court's jurisdiction over Jefferson. 28 U.S.C. § 2201(a). Given the strictures of the Declaratory Judgment Act, NGS's declaratory action may proceed, if at all, only after establishing personal jurisdiction under ERISA. Hence, despite possible procedural fencing in this case, the *Brillhart* abstention solution used in otherwise analogous Declaratory

---

[4] To proceed, this action requesting injunctive and declaratory relief against a state court proceeding would have to fall under exceptions to both the Anti-Injunction Act and *Younger*. *See Mitchum v. Foster*, 407 U.S. 225, 233-37 (1972). *See generally*, ERWIN CHEMERINSKY, FEDERAL JURISDICTION, §§ 11.2 and 13.3-13.4 (3d ed. 1999). However, this action appears to meet exceptions to neither. In particular, we do not read ERISA's authorization of injunctive relief as expressly authorizing injunctions of state court proceedings.

Judgment Act cases is not available to us. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

## II

Personal jurisdiction under § 1132(e)(2) depends upon subject matter jurisdiction under § 1132(a)(3). If § 1132(e)(2) applies to this case, then the district court arguably had proper jurisdiction over Jefferson, because his minimum contacts with the United States might suffice to establish personal jurisdiction.[5] If it does not apply, then the district court did

---

[5]Contrary to NGS's assertion in its brief, it is not universally accepted by the courts of appeals that a nationwide service of process provision suffices for personal jurisdiction. The Supreme Court has never squarely decided whether Fifth Amendment due process is satisfied merely by national contact under a nationwide service of process provision. NGS cites *Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413 (10th Cir. 1996), as evidence that the Tenth Circuit has adopted the national contacts test. However, that circuit recently repudiated that very proposition and held that the Fifth Amendment requires more. *See Peay v. BellSouth Med. Asst. Plan*, 205 F.3d 1206, 1211 n.4 (10th Cir. 2000) ("Plaintiffs contend that we adopted the national contacts test in [*Knowles*] . . . . *Knowles* merely stands for the narrow proposition that under the facts and circumstances presented in that case, [15 U.S.C.] § 77v(a) authorized the district court to exercise and enforce its subpoena power worldwide"). Moreover, the Eighth Circuit has implied that ERISA's nationwide service of process provision would not establish personal jurisdiction in circumstances similar to this case. *See Doe II*, 140 F.3d at 790 ("Prudential was justified in seeking declaratory relief in *the only forum* in which Jane Doe was subject to personal jurisdiction") (emphasis added); *see also Panama v. BCCI Holdings*, 119 F.3d 935, 947 (11th Cir. 1997) (holding, in the context of RICO's nationwide service of process provision, that "[a] defendant's 'minimum contacts' with the United States do not . . . automatically satisfy the due process requirements of the Fifth Amendment").

That said, the weight of Sixth Circuit precedent supports acceptance of the national contacts approach. *See Haile v. Henderson Nat'l Bank*, 657 F.2d 816 (6th Cir. 1981) (adopting the national contacts approach for the nationwide service of process provision in the federal receivership statute, 28 U.S.C. §§ 754 and 1692); *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993) (citing *Haile* to accept national contacts under the nationwide service of process provision in the

---

procedural fencing and circumventing a plaintiff's chosen forum. However, to the extent that the *Gulf Life* court interprets Congress' purpose to mean that fiduciaries may *never* invoke § 1132(e)(2), because it is there for use only by beneficiaries and participants, we respectfully disagree. The terms of the statute do not require that limited a reading, and we need not absolutely bar fiduciaries from invoking § 1132(e)(2) in order to say that the suit here does not enforce ERISA. Section 1132(e)(2) allows suit to be brought "in the district where the plan is administered" . . . " *or* where a defendant resides," which suggests that all suits need not be brought in the defendant-beneficiary/participant's forum. 29 U.S.C. § 1132(e)(2) (emphasis added). The statute does not limit nationwide service of process only to suits brought by beneficiaries and participants, but neither does it require that fiduciaries be able to invoke it whenever beneficiaries can.

### B. Injunctive and Declaratory Relief Under § 1132(a)(3)

Having shown that fiduciary suits against beneficiaries/participants are not always permissible under § 1132(a)(3), we next address NGS's argument that injunctive and declaratory relief are generally available under that section. As NGS points out, § 1132(a)(3) "has been interpreted as creating a cause of action for a declaratory judgment." *Thiokol*, 987 F.2d at 380, *citing Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust for S. Calif.*, 463 U.S. 1, 27 n.31 (1983); *see also E.I.C. Elkins*, 872 F. Supp. 931 (entertaining an action for injunctive and declaratory relief to determine whether ERISA preempts a state law); *Firestone*, 810 F.2d 550 (entertaining an action for injunctive and declaratory relief to determine whether ERISA preempts an Akron city tax of general application). But just because a declaratory action may be permissible in some circumstances under § 1132(a)(3) to enforce ERISA preemption does not mean that NGS's declaratory action is one to enforce ERISA preemption.

Analogizing to *Thiokol*, NGS states that its injunctive and declaratory actions are appropriate under § 1132(a)(3) "to

years in Maine and who files a claim for benefits with that company, to be required to litigate his claim in Los Angeles.

*Gulf Life*, 809 F.2d at 1525 n.7. According to the Eleventh Circuit, although ERISA thus meant to allow plan participants and beneficiaries to sue fiduciaries anywhere in the country, interpreting it to also allow a fiduciary to file a declaratory judgment action in the district where the plan is administered and serve the out-of-state beneficiary would undermine ERISA's goal of enhancing the accountability of benefit plans to beneficiaries. The Eleventh Circuit read the legislative history to proscribe such a counterintuitive interpretation of the statute: "Were we to adopt Gulf Life's view, the sword that Congress intended participants/beneficiaries to wield in asserting their rights could instead be turned against those whom it was designed to aid." *Id.* at 1525. Similarly, the Ninth Circuit has noted that "[i]f a district court generally were compelled to hear an ERISA insurer's declaratory suit, the insurer would be able to circumvent the beneficiary's choice of a state forum in every ordinary case on the insurance contract." *Transamerica Occidental Life*, 811 F.2d at 1255. So while a fiduciary may bring actions against its own plan's beneficiaries for violating plan terms, Jefferson is right that NGS's action is on less solid footing.

Still, *Gulf Life* and *Winstead* do define the scope of § 1132(e)(2) differently. *Gulf Life* holds that a fiduciary cannot bring an action to determine what it owes a beneficiary, because doing so does not enforce an ERISA provision or the terms of the plan. As that court points out, fiduciaries are not mentioned in § 1132(a)(1)(B), which authorizes beneficiaries and participants to bring suits to recover benefits due and/or clarify future benefits owed. Under the principle of *expressio unius est exclusio alterius*, it would do violence to the statute to hold that fiduciaries could bring similar suits. Furthermore, contrary to the *Winstead* court's suggestion in dicta, it would not enforce ERISA's purpose to allow such declaratory actions against beneficiaries, especially insofar as it opens the door to

not have proper jurisdiction and properly dismissed the case. *See KLLM, Inc. Employee Health Protection Plan v. Ontario Community Hosp.*, 947 F. Supp. 262, 269 (S.D. Miss. 1996). Thus, the pertinent question for personal jurisdiction in this case becomes whether the district court had proper subject matter jurisdiction *under § 1132(a)(3)*, which reads:

> (a) A civil action may be brought
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). NGS argues that a straightforward reading of §§ 1132(a)(3)(A) and 1132(a)(3)(B)(ii) authorizes its action to enjoin a suit that violates the subchapter's preemption provision (§ 1144) and to enforce that provision. Likewise, it contends that § 1132(a)(3)(B)(ii) authorizes its

---

Securities Exchange Act of 1934). Given this line of precedent, we likely would have to find personal jurisdiction in this case if NGS's action truly were brought under ERISA. *See Bellaire Gen. Hosp. v. Blue Cross and Blue Shield of Mich.*, 97 F.3d 822, 826 (5th Cir. 1996) (interpreting a precedent akin to *United Liberty* as binding the court to hold that ERISA's nationwide service of process provision also satisfies due process, but noting a "fail[ure] to apprehend how personal jurisdiction can be separated from due process by Congressional enactment of nationwide service of process provisions"). Because we ultimately conclude that NGS's action is not brought under §1132(a)(3), we need not decide whether a national contacts approach to § 1132(e)(2) would comport with Fifth Amendment due process. However, we note that the interests might balance differently in the ERISA context than in contexts like bankruptcy and interpleader where the need for all parties to appear in one forum might justify personal jurisdiction via nationwide service of process provisions. We note further that bankruptcy and interpleader are among the recognized exceptions to the Anti-Injunction Act in this circuit, whereas ERISA is not. *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (1997) (reserving the question whether ERISA expressly authorizes injunctions against state court proceedings and deciding the case on other grounds).

declaratory action as appropriate equitable relief to enforce the preemption provision of the subchapter. Assuming NGS is a fiduciary, the question narrows to whether seeking injunctive and declaratory relief against a state court tort action enforces ERISA's preemption provision. Despite NGS's strenuous arguments to the contrary, we conclude it does not.

NGS does not point this court to any cases where a suit has been allowed by an ERISA fiduciary against a plan beneficiary to enforce ERISA's preemption provision. NGS instead proceeds by arguing that fiduciary suits against beneficiaries are generally permissible under § 1132(a)(3), then that injunctive and declaratory relief is generally available under § 1132(a)(3), and finally that such relief may be sought to enforce the preemptive effect of § 1144. Assuming these steps are satisfied, NGS argues that § 1132(e)(2) establishes personal jurisdiction over a beneficiary sued under § 1132(a)(3). Problems exist with at least the first three lines of NGS's analysis.

### A. Suits by Fiduciaries Against Beneficiaries Under § 1132(a)(3)

Courts have previously read § 1132(a)(3) to authorize some suits by fiduciaries against beneficiaries. Cases of fiduciaries suing beneficiaries are rare, however, comprising a few cases of suits to recover from a beneficiary money that should not have been paid out, or to recover from a beneficiary who made a misrepresentation to the ERISA plan, such as in an application to join the plan. *See Metropolitan Life Ins. Co. v. Socia*, 16 F. Supp. 2d 66, 72 (D. Mass. 1998) (allowing a restitution suit for overpayment where a participant concealed receipt of social security benefits from the fiduciary); *Guardian Life Ins. Co. v. Claydon*, 855 F. Supp. 43, 44 (D. Conn. 1994) (allowing suit by a fiduciary against the estate of an individual who made misrepresentations in her application to join the plan); *see also Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 nn.5-6 (4th Cir. 1990) (allowing an equitable suit for unjust enrichment by a fiduciary against

suit in this circuit by including a nationwide service of process provision in ERISA. We disagree. To the extent legislative history is reliable, it does not contradict our reading of the statutory text.

Jefferson argues that § 1132(a) does not permit suits by insurance companies or fiduciaries against individuals, and that such a reading "perverts the intentions and dictates of Congress, and flies in the face of the statu[t]e itself" (Jefferson's brief at 7). As Jefferson characterizes the legislative history, Congress intended to make it easier for individuals to sue companies that would not pay up, not make it easier for companies running ERISA plans to sue beneficiaries. As noted above, however, fiduciaries may bring suit against beneficiaries in some cases. Still, there is legislative history backing up the thrust of Jefferson's argument, which though mild and not dispositive, is found in both House and Senate reports:

> [The Committee intends] . . . to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants. For actions in federal courts, nationwide service of process is provided in order to remove a possible procedural obstacle to having all proper parties before the court.

S. Rep. No. 93-127, 93d Cong., 1st Sess., at 35 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4871; H.R. Rep. No. 93-533, 93d Cong., 1st Sess., at 17 (1973) (same language), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655.

The Eleventh Circuit read this language to demonstrate Congress' intent that the nationwide service of process provision only run one way:

> We believe that ERISA's legislative history unquestionably demonstrates that Congress did not intend to allow a fiduciary to force a plan participant/beneficiary who worked for a company for 30

does not, for example, risk losing the ability to contest coverage if it waits to be sued. *See Guardian Life*, 855 F. Supp. at 44. Nor does it need to interdict the ongoing enforcement of a state law against itself. *See Thiokol Corp. v. Dept. of Treas.*, 987 F.2d 376 (6th Cir. 1993); *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir. 1987); *E.I.C. Elkins Constructors, Inc. v. Chiles*, 872 F. Supp. 931 (N.D. Fla. 1994).

Opposing *Gulf Life*, NGS instead defends the Seventh Circuit's supposed reading that "[w]e do no semantic violence to section 1132(a)(3) when we interpret it to allow an ERISA plan to bring a declaratory judgment action to determine the extent of its liability, and we promote the goals of ERISA by that interpretation." *Winstead v. J.C. Penney Co.*, 933 F.2d 576, 580 (7th Cir. 1991). But *Winstead* allows a declaratory judgment action by an ERISA plan against another plan to determine the extent of its liability in a coordination-of-benefits/primacy-of-obligation context. It does not countenance an action by a fiduciary against a beneficiary, and personal jurisdiction was not at issue in that case. Furthermore, the Seventh Circuit has subsequently recognized the limited nature of its holding in *Winstead*: "Our opinion in *Winstead* . . . holds that § 502(a)(3) may be used to coordinate related plans' conflicting or overlapping provisions." *Massey-Ferguson Div. of Varity Corp. v. Gurley*, 51 F.3d 102, 103 (7th Cir. 1995).

Finally, NGS contends that an injunction is appropriate relief, despite any judicial qualms with NGS's bringing suit against a plan beneficiary in a forum far removed from the beneficiary's place of residence. By NGS's lights, Congress has already passed judgment on the propriety of NGS's filing

---

a completely preempted claim in state court, the presence of personal jurisdiction will not turn on which kind of preemption exists for the purposes of an action for injunctive and declaratory relief. This is as it should be given the inefficiencies that would arise if the entire preemption issue had to be litigated in a forum seemingly foreign to the dispute just to decide the personal jurisdiction question.

a beneficiary who refused to reimburse the plan for benefits advanced to her when she received a judgment against a third party in excess of the benefits advanced to her under the plan, but noting the possibility of (and dearth of authority supporting) a suit under § 1132(a)(3)).[6] These cases all involved beneficiaries sued by fiduciaries for violating terms of their respective plans, not provisions of ERISA. Although it makes perfect sense that fiduciaries would be able to sue plan beneficiaries to recoup losses from plan violations, even in distant fora, these cases hardly indicate that ERISA authorizes fiduciaries to sue beneficiaries for violating provisions of ERISA. The fact that this subchapter of ERISA specifies penalties available against fiduciaries who violate the statute, but not against beneficiaries, further suggests that the statute does not contemplate any suits against beneficiaries to enforce provisions of ERISA, let alone suits brought by fiduciaries.

Two previous cases in which fiduciaries have attempted to enforce ERISA preemption against beneficiaries are similar enough to NGS's action to merit close comparison. Though not discussed by the parties, *Prudential Ins. Co. of America v. Doe* most closely resembles the case before the court, because the fiduciary there sought a declaratory judgment under § 1132(a)(3) that would have had the effect of enjoining a state court tort action. However, in that case, personal jurisdiction was not in dispute and the plan had filed suit first. Under those circumstances, the appeals court held that a district court need not abstain from hearing a declaratory action, especially given the broad discretion invested in district courts under the Declaratory Judgment Act:

---

[6]In one case it cites in this vein, NGS mischaracterizes the Sixth Circuit's holding in *Metropolitan Life Ins. Co. v. Marsh* as a suit by an ERISA fiduciary against a beneficiary. 119 F.3d 415 (6th Cir. 1997). In fact, that case was an interpleader action whereby Metropolitan sought to determine to whom it should pay benefits by turning over to the court the money it owed so that the court could decide between the contesting parties. The fiduciary sought no action against the plan's beneficiaries at all.

[A] federal court need not abstain from proceeding with a declaratory judgment action "where the federal suit is filed substantially prior to any state suits, significant proceedings have taken place in the federal suit, and the federal suit has neither the purpose nor the effect of overturning a previous state court ruling."

*Doe II*, 140 F.3d at 788, *quoting Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 886 (5th Cir 1993). Nonetheless, invited to apply the *Brillhart* factors in considering abstention on remand, the district court did so and abstained. *See Prudential Ins. Co. of Am. v. Doe*, 46 F. Supp. 2d 925, 929-30 (E.D. Mo. 1999) ("*Doe III*"), *citing Brillhart*, 316 U.S. at 495.[7]

The parties discuss in great detail the other similar case, whose holding is contrary to *Doe*. The Eleventh Circuit's opinion in *Gulf Life Insurance Co. v. Arnold* holds that a fiduciary's declaratory judgment action to determine the extent of its liability is not an action that enforces ERISA or the terms of any plan as per § 1132(a)(3), so personal jurisdiction cannot be obtained for such an action via § 1132(e)(2). *See Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520, 1523-24 (11th Cir. 1987). NGS seeks to distinguish its own action from that in *Gulf Life* in a number of ways. NGS notes that it requests an injunction as well as declaratory relief, so that *Gulf Life*'s debatable language requiring the bringing of an injunction action under § 1132(a)(3) does not apply here. In addition, NGS argues that its (otherwise dubious) action for declaratory relief is redeemed by piggybacking on its request for injunctive relief. Since the ERISA statute provides explicitly for injunctive relief, NGS reasons that its

---

[7] We do not know whether the Eighth Circuit would extend *Doe II* to find personal jurisdiction under § 1132(e)(2), but we would not so extend it given that personal jurisdiction is not established under the Declaratory Judgment Act in this case, as discussed above. *But cf. Federal Fountain, Inc. v. KR Entertainment, Inc. (In re Federal Fountain, Inc.)*, 165 F.3d 600, 601-02 (8th Cir. 1999) (en banc) (adopting the national contacts test in the bankruptcy context).

action for declaratory relief would have arisen (as it has) as a companion claim to an injunction action in the absence of the Declaratory Judgment Act, and thus is appropriate. In other words, NGS argues that its declaratory action need not be equitable since the injunctive action already establishes personal jurisdiction, but that its declaratory action is equitable nonetheless. But a declaratory action is not equitable where it substitutes for a defense to claims on a contract in an underlying suit. Besides which, the reasons articulated for the invalidity of NGS's injunction suit make its declaratory action —whether independent or not— invalid as well. To the extent equitable relief is sought to prevent suit in Florida state court, that is not a kind of equitable relief made available under ERISA.

NGS further contends that declaratory and injunctive relief is necessary to enforce ERISA preemption, because unlike the plaintiff-fiduciary in *Gulf Life* who could enforce the plan by simply refusing to pay benefits not owed, it is not within NGS's own power to prevent Jefferson's Florida lawsuit. But NGS has no right to prevent the initiation of the suit in state court; not even complete preemption entails a right not to be sued in state court. The Supreme Court's complete preemption jurisprudence does not suggest such a right, and NGS provides not a shred of support for such immunity from suit. Rather, the doctrine of complete preemption makes removal available automatically in those extraordinary cases where a state law claim is completely preempted. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-67 (1987) (providing removal to federal court as the proper remedy for a completely preempted claim initially filed in state court). NGS can defend itself on ERISA preemption grounds in state court, or seek removal to federal district court in Florida. It has no need to resort to peremptory measures in another federal court to protect its preemption rights.[8] NGS

---

[8] "[A] defense premised on § 1132 preemption creates federal question jurisdiction, but . . . one based on § 1144 preemption does not." *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 945 (6th Cir. 1994). Because it does not enforce ERISA to prevent the filing of even