364 F.3d 521
 DENNY'S, INCORPORATED, in its fiduciary capacity as plan administrator; Denny's, Incorporated Vacation Pay Plan; Andrew F. Green, in his capacity as trustee of the Denny's Incorporated Employee Benefits Trust; Denny's Incorporated Employee Benefits Trust, Plaintiffs-Appellants,
v.
Chuck CAKE, in his capacity as Acting Director of the California Department of Industrial Relations; Arthur LUJAN, in his capacity as the Labor Commissioner of the State of California, Defendants-Appellees.
American Association of Retired Persons, Amicus Supporting Appellee.
 No. 03-1326.
 United States Court of Appeals, Fourth Circuit.
 Argued: January 20, 2004.
 Decided: April 12, 2004.
 
 ARGUED: Barry Vaughn Frederick, Lehr, Middlebrooks, Price & Proctor, P.C., Birmingham, Alabama, for Appellants. Miles Eric Locker, Division of Labor Standards Enforcement, Department of Industrial Relations, San Francisco, California, for Appellees. ON BRIEF: Perry D. Boulier, Holcombe, Bomar, Gunn & Bradford, P.A., Spartanburg, South Carolina, for Appellants. Anne Hipshman, Susan A. Dovi, Division of Labor Standards Enforcement, Department of Industrial Relations, San Francisco, California, for Appellees. Mary Ellen Signorille, AARP Foundation Litigation, Melvin R. Radowitz, AARP, Washington, D.C., for Amicus Curiae.
 Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.
 Vacated and remanded by published opinion. Judge DIANA GRIBBON MOTZ wrote the opinion, in which Judge WIDENER joined. Judge WILLIAMS wrote a concurring opinion.
 OPINION
 DIANA GRIBBON MOTZ, Circuit Judge:
 
 
 1
 Upon notification from California officials that its vacation pay practices violated state labor law, Denny's, Inc. brought this action in federal court in South Carolina. Denny's asked the court to declare that the Employee Retirement Income Security Act (ERISA) preempted these state-law claims, and enjoin the California Labor Commissioner from applying the state law against Denny's. Shortly thereafter, the Commissioner sued Denny's in state court in California seeking to enforce the state law. Several months later, the district court dismissed this action, finding it lacked personal jurisdiction over the Commissioner. We believe that the court did have jurisdiction, but conclude that the Anti-Injunction Act bars all of the relief that Denny's seeks. Accordingly, we vacate the judgment of the district court and remand for entry of an order dismissing the complaint for failure to state a claim upon which relief can be granted.
 
 I.
 
 2
 Denny's, a restaurant chain with its principal place of business in South Carolina, maintains the Denny's, Inc. Vacation Plan ("the Plan") and the Denny's, Inc. Employee Benefits Trust ("the Trust") for the stated purpose of providing vacation benefits to eligible employees. The Plan provides that salaried and hourly employees cannot use vacation benefit days and will not be paid any vacation benefits upon termination of their employment until and unless they have completed, respectively, six months or one year of continuous employment with Denny's.
 
 
 3
 On July 11, 2002, Denny's received a letter from an attorney at the California Department of Industrial Relations. The purpose of the letter was "to come to a global resolution" of issues raised by claims of former Denny's employees filed with the California Labor Commissioner. The attorney explained that Denny's policy requiring forfeiture of vacation benefits when employees leave prior to six months or one year of employment violated Cal. Lab.Code § 227.3. That statute provides that when "an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages" and, further, "that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination." § 227.3.
 
 
 4
 The California attorney noted that the Department had concluded that "Denny's method of funding its vacation pay plan constituted a payroll practice and the plan is not therefore an ERISA plan which preempts state enforcement laws." The attorney recounted prior discussions and litigation between the parties on this issue, including a state court's refusal to grant summary judgment to Denny's on its pre-emption defense. Given the numerous claims filed with the Department, the attorney proposed that Denny's meet with the Commissioner and discuss an "amicable resolution" to avoid "the time and expense of litigation." Otherwise, the Department would have "to file an action against Denny's to finally resolve this issue."
 
 
 5
 In response, on September 6, 2002, Denny's[1] filed this action for declaratory and injunctive relief in federal court in South Carolina against the Commissioner and the director of the Department of Industrial Relations (collectively, "Commissioner"). Denny's sought: (1) a declaration that the Plan and Trust constitute an ERISA plan; (2) a declaration that "ERISA preempts the California statutes, regulations, and any action or decision" of the Commissioner "having the effect of law that [the Commissioner] seek [s] to enforce against [Denny's] based upon California law"; and (3) "[p]reliminary and permanent injunctions barring [the Commissioner] from taking any action to enforce California law against [Denny's] with regard to the Plan and the Trust."
 
 
 6
 Three weeks later, the Commissioner filed a complaint against Denny's in California state court, for damages and injunctive relief. The Commissioner asked the state court to award it unpaid vacation wages and waiting time penalties pursuant to Cal. Lab.Code § 203, and to order Denny's to "cease and desist from violating" all provisions of the state labor code. In its answer to the Commissioner's state court lawsuit, Denny's alleged ERISA preemption as an affirmative defense.
 
 
 7
 The Commissioner then moved to dismiss the present action, contending that a federal district court in South Carolina lacked personal jurisdiction over the California officials, notwithstanding ERISA's nationwide service of process provision, 29 U.S.C. § 1132(e)(2) (2000). Alternatively, the Commissioner contended that the Anti-Injunction Act, 28 U.S.C. § 2283 (2000) and abstention based on Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), compelled dismissal. On February 27, 2003, the district court granted the Commissioner's motion, concluding that it had no personal jurisdiction over the Commissioner. Denny's, Inc. v. Cake, 247 F.Supp.2d 813 (D.S.C.2003).
 
 II.
 
 8
 We turn first to the question of whether the district court could exercise personal jurisdiction over the Commissioner under 29 U.S.C. § 1132(e)(2). In the case at hand the answer to that question hinges on the court's subject matter jurisdiction under 29 U.S.C. § 1132(a)(3).
 
 
 9
 ERISA contains a nationwide service of process provision that permits an ERISA enforcement action to be brought in federal court in a district "where the plan is administered" and process to be "served in any other district where a defendant resides or may be found." § 1132(e)(2). Accordingly, since the Plan is administered in Spartanburg, South Carolina, and the Commissioner has been served in California, a district court sitting in South Carolina would have personal jurisdiction over the Commissioner under § 1132(e)(2) if this is a proper ERISA enforcement action — that is, if the court had subject matter jurisdiction over the action under § 1132(a)(3).[2] Section 1132(a)(3) provides that "a participant, beneficiary, or fiduciary" may bring an ERISA enforcement action in federal court:
 
 
 10
 (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]
 
 
 11
 29 U.S.C. § 1132(a)(3) (emphasis added).
 
 
 12
 Section 1132(a)(3)(B) thus permits an ERISA fiduciary to bring an action to "enforce any provisions of this subchapter." Id. Indisputably, "this subchapter" refers to subchapter I of Chapter 18 of the United States Code, which codified Title I of ERISA and includes 29 U.S.C. §§ 1001-1191. "[T]his subchapter" thus clearly contains ERISA's preemption provision, 29 U.S.C. § 1144. The plain language of § 1132(a)(3)(B) therefore appears to permit an ERISA fiduciary to bring an action to "enforce" § 1144 — a "provision of this subchapter."[3]
 
 
 13
 Indeed, the Supreme Court has expressly stated that"[u]nder § 502(a)(3)(B) of ERISA [§ 1132(a)(3)(B)], a participant, beneficiary or fiduciary of a plan covered by ERISA may bring a declaratory judgment action in federal court to determine whether the plan's trustees may comply with a state [law]." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 26-27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The Court ultimately rejected the view that a state action brought by the California Franchise Tax Board against an ERISA fiduciary for a declaration that the fiduciary must comply with state law arose under ERISA and so could be removed to federal court — but only because the tax board itself was not an ERISA "participant, beneficiary, or fiduciary," as required by § 1132(a)(3). Id. at 27, 103 S.Ct. 2841. The Court assumed that the ERISA fiduciary "could have sought an injunction under ERISA against application to it of state regulations that require acts inconsistent with ERISA," but held that the declaratory action by the State, not an ERISA participant, beneficiary, or fiduciary, did not" `arise under' federal law" and so could not be removed to federal court. Id. at 20, 103 S.Ct. 2841.
 
 
 14
 In short, both the plain language of § 1132(a)(3) and the Supreme Court's interpretation of it seem to compel the conclusion that an ERISA fiduciary, like Denny's,[4] could bring the instant action to "enforce" § 1144 by way of "an injunction ... against application ... of state regulations that require acts inconsistent with ERISA." Franchise Tax Bd., 463 U.S. at 20, 103 S.Ct. 2841.
 
 
 15
 Yet, the district court held that Denny's declaratory and injunctive action based on ERISA's preemption provision, § 1144, did not constitute an action to "enforce" ERISA within the meaning of § 1132(a)(3)(B). Denny's, 247 F.Supp.2d at 820. The court apparently concluded that because Denny's § 1144 preemption defense in the California case would not suffice to provide federal removal jurisdiction over it, the instant action, based on § 1144, could not be brought under § 1132(a)(3). Id. at 820-821. But, as explained above, neither Franchise Tax Board nor the plain language of § 1132(a)(3) provide any basis for treating the present action precisely like one in which a fiduciary seeks removal asserting § 1144 preemption.
 
 
 16
 We acknowledge that this result may at first seem odd because, just as the present action depends on whether the plaintiff's claim falls within § 1132(a)(3), so too "complete preemption,"[5] which provides a basis for federal removal jurisdiction, depends in the ERISA context upon whether the underlying state law claim falls within § 1132(a). See, e.g., Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370-71 (4th Cir.2003). But a court determines "complete preemption" by determining the plaintiff's capacity to bring its state law claims under § 1132(a), not the defendant's. Id. at 371-72. Thus, the fact that a state court defendant's assertion of § 1144 preemption as a defense does not create complete preemption says nothing about whether that defendant could have brought an action to enforce § 1144 preemption as a plaintiff in federal court under § 1132(a). In the present case, for instance, the Commissioner could not bring his claims in federal court under § 1132(a) because, like the tax board in Franchise Tax Board, he is not an ERISA participant, beneficiary, or fiduciary; as a result, his state court suit is not completely preempted by Denny's assertion of a preemption defense under § 1144. Id. at 372-73. But Denny's, as a fiduciary, does not face the same barrier to bringing the instant § 1132(a)(3) action in federal court.
 
 
 17
 The district court based its contrary decision almost exclusively on NGS American, Inc. v. Jefferson, 218 F.3d 519 (6th Cir.2000). There the Sixth Circuit held that an ERISA fiduciary's federal suit — seeking a declaration that ERISA preempted a beneficiary's threat to initiate private state court litigation against the fiduciary based on an alleged violation of state law — could not be brought under§ 1132(a)(3); see also Gulf Life Ins. Co. v. Arnold, 809 F.2d 1520, 1523-24 (11th Cir.1987) (holding that a fiduciary's declaratory judgment action seeking to determine its liability for benefits claimed by a former employee could not be brought under § 1132(a)(3)).[6] But Jefferson involved a fiduciary suing for a declaration that ERISA preempted the threat of a private suit by a beneficiary, while the case at hand involves a very different situation: a fiduciary suing for a declaration that ERISA preempts state authorities from enforcing state law against an ERISA plan. The district court recognized that "the facts of Jefferson are easily distinguishable from the facts at hand," but nevertheless concluded that this "distinction does not affect the application of the Jefferson Court's reasoning." Denny's, 247 F.Supp.2d at 821.
 
 
 18
 The Jefferson court itself, however, found this difference extremely significant, taking pains to distinguish the case before it, in which the plaintiff challenged "the permissibility of a private cause of action," from earlier Sixth Circuit precedent, Thiokol Corp. v. Dep't of Treasury, 987 F.2d 376 (6th Cir.1993), in which the plaintiff challenged "the enforceability of an existing state regulation." Jefferson, 218 F.3d at 529. In Thiokol, as here, an ERISA fiduciary sought declaratory and injunctive relief in federal court on the basis of § 1144 preemption. 987 F.2d at 380. The Thiokol fiduciary, like Denny's in this case, sought to prevent state authorities from enforcing state law provisions against an asserted ERISA plan. Id. at 377-78. The Thiokol court unequivocally held that, in these circumstances, the fiduciary could bring a § 1144 preemption claim in federal court under § 1132(a)(3). Id. at 380.[7]
 
 
 19
 In determining whether a case falls within § 1132(a)(3), we agree with the Sixth Circuit: an action based on ERISA preemption brought by a fiduciary to enjoin a private suit critically differs from such an action brought by a fiduciary to prevent the enforcement of a state law against an ERISA plan. A party's private suit, based on an arguably preempted state law, brought against an ERISA plan, poses no threat to violate § 1144 or any other provision of ERISA or the plan. See Jefferson, 218 F.3d at 529-30. The only "harm" in denying injunctive and declaratory relief to the plan's fiduciary in such a case is to force the fiduciary "to raise its preemption claim in state court, or to seek removal to federal district court." Id. at 529. But a state suit to enforce a state law against an ERISA plan may well violate ERISA and the plan. In such a case, the plan's fiduciary faces a Hobson's choice: obey the state law, and risk violating the provisions of the plan (and hence ERISA, 29 U.S.C. § 1104(a)(1)(D)), or disobey the state law and then raise "ERISA preemption as a defense in a state enforcement action" and "risk[] breaking the law." Id. In addition to potentially coercing a plan fiduciary into violating plan provisions and ERISA, a state's enforcement of an assertedly preempted state law against an ERISA plan (unlike a private suit based on state law) is arguably itself a "violation" of § 1144 — which provides that ERISA "shall supercede any and all State laws." See, e.g., HMI Mech. Sys., Inc. v. McGowan, 266 F.3d 142, 149 (2d Cir.2001) (noting that a state's approach to enforcing a law "violated ERISA preemption standards").
 
 
 20
 In sum, Denny's declaratory and injunctive action to enforce § 1144 falls within § 1132(a)(3), and so the district court did have personal jurisdiction over the Commissioner under § 1132(e)(2). Therefore, we must vacate its judgment dismissing this action for lack of personal jurisdiction.
 
 III.
 
 21
 Because the district court found it lacked personal jurisdiction over the Commissioner, it did not address the Commissioner's alternative Anti-Injunction Act (hereinafter "the Act") argument. The Commissioner reiterates on appeal that the Act bars a federal court from granting the relief requested by Denny's and so requires dismissal of the case for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Act provides:
 
 
 22
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 28 U.S.C. § 2283.[8]
 
 23
 The Act serves as a "necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts" and "represents Congress' considered judgment as to how to balance the tensions inherent in such a system." Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). Accordingly, "[w]e take seriously the mandate in the Anti-Injunction Act and recognize that for over two hundred years, the Act has helped to define our nation's system of federalism." Employers Res. Mgmt. Co., Inc. v. Shannon, 65 F.3d 1126, 1130 (4th Cir.1995).
 
 
 24
 The Act constitutes "an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977) (plurality opinion). These three exceptions are injunctions: (1) expressly authorized by statute; (2) necessary to aid the court's jurisdiction; or (3) required to protect or effectuate the court's judgments. Chick Kam Choo, 486 U.S. at 146, 108 S.Ct. 1684; Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287-88, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). None of these exceptions apply here.[9]
 
 
 25
 Notwithstanding the inapplicability of the only exceptions to the Act recognized by Congress, Denny's contends that the Act does not bar its suit because of a judicial exception created by one of our sister circuits and followed by two others. Specifically, Denny's contends that the Act's prohibition on enjoining "proceedings in state court" does not apply because when it filed this action requesting injunctive relief in early September 2002, "there were no pending state proceedings, within the meaning of the [Act] or otherwise." Reply Brief at 7.
 
 
 26
 The Seventh Circuit so held in Barancik v. Investors Funding Corp., 489 F.2d 933, 937 (7th Cir.1973); see also Hyde Park Partners, L.P. v. Connolly, 839 F.2d 837, 842 n. 6 (1st Cir.1988) (dicta); Nat'l City Lines, Inc. v. LLC Corp., 687 F.2d 1122, 1127 (8th Cir.1982). Other circuits, however, have rejected this judicial exception. Royal Ins. Co. of Am. v. Quinn-L Capital Corp., 3 F.3d 877, 885 (5th Cir.1993) (holding that the Act does apply even if the request for federal injunctive relief is filed first); Roth v. Bank of the Common-wealth, 583 F.2d 527, 533 (6th Cir.1978), cert. dismissed, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979) (same); see also Standard Microsystems Corp. v. Texas Instruments, 916 F.2d 58, 61-62 (2d Cir.1990) (criticizing the reasoning in Barancik and stating that the court had "considerable doubt [about] whether the Barancik rule should be adopted in this circuit"); Nat'l City Lines, 687 F.2d at 1135 (Arnold, J., dissenting) (explaining that "the mere filing of a motion in a federal court seeking to enjoin state-court proceedings should [not] in and of itself deprive later filed state-court action of the protection of § 2283").
 
 
 27
 As always, we turn first to the plain language of the statute to determine its meaning. See Williams v. Taylor, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). The plain language of the Act clearly and unequivocally prohibits a federal court from granting "an injunction to stay proceedings in a State court." 28 U.S.C. § 2283. Of course, in order for the Act's bar to apply, proceedings in state court must have begun. See Dombrowski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (the Act does "not preclude injunctions against the institution of state court proceedings, but only bar[s] stays of suits already instituted"). But nothing in the Act confines its bar to situations in which the federal plaintiff requests injunctive relief after the state suit has been filed. See Royal Ins. Co., 3 F.3d at 885.
 
 
 28
 Courts must "presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). A court may not disregard the plain language of a statute unless a literal application of the statutory language "would lead to absurd results ... or would thwart the obvious purpose of the statute." In re Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 643, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978) (internal quotation marks and citation omitted). Here literal application of the Act's language would neither thwart its purpose nor produce an absurd result. Quite the contrary, abiding by the statutory language clearly furthers the Act's purpose of avoiding "unseemly conflict between the state and the federal courts." N.L.R.B. v. Nash-Finch Co., 404 U.S. 138, 146, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971).
 
 
 29
 Moreover, the Supreme Court has directed that the Act, in particular, "is not a statute conveying a broad general policy for appropriate ad hoc application" but rather is "expressed in a clear-cut prohibition qualified only by specifically defined exceptions." Amalgamated Clothing Workers v. Richman Bros., 348 U.S. 511, 515-16, 75 S.Ct. 452, 99 L.Ed. 600 (1955). Courts are not to "enlarge[]" these "exceptions ... by loose statutory construction." Atl. Coast Line, 398 U.S. at 287, 90 S.Ct. 1739. Instead, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed ... to finally determine the controversy." Id. at 297, 90 S.Ct. 1739.
 
 
 30
 The Barancik court acknowledged the Supreme Court directive that the Act "imposes an absolute ban, circumscribing the federal court's power to act unless a case falls within one of the explicit exceptions from its command." Barancik, 489 F.2d at 937. It also recognized that "[t]he mere fact that the federal complaint was filed before the state proceeding was commenced is not sufficient to avoid the statutory bar." Id. at 936 (citing Kline v. Burke Construction Co., 260 U.S. 226, 232, 43 S.Ct. 79, 67 L.Ed. 226 (1922)). But see Nat'l City Lines, 687 F.2d at 1127 (stating that the Act "is inapplicable when a federal court has first obtained juris-diction of a matter in controversy by the institution of suit"). Nevertheless, the Barancik court concluded that "the mandatory prohibition in § 2283 against injunctions staying state court proceedings does not apply to state actions commenced after a motion for injunctive relief is filed in the federal court." Barancik, 489 F.2d at 938.
 
 
 31
 The Barancik court advanced several policy concerns in support of its holding. For example, it worried that "[u]nless the applicability of the statutory bar is determined by the state of the record at the time the motion for an injunction is made, a litigant would have an absolute right to defeat a well-founded motion by taking the very step the federal court was being urged to enjoin." Id. at 937. But a federal court can eliminate this problem by issuing a temporary restraining order against the filing of a state court suit while considering a motion for a preliminary injunction seeking such relief. See Royal, 3 F.3d at 884; see also Dombrowski, 380 U.S. at 484 n. 2, 85 S.Ct. 1116 (noting that the Act does not prevent a federal court from restraining a party from instituting state proceedings). The Barancik court feared that such reliance on temporary restraining orders "might encourage the liberal granting of the kind of protective orders the statute was intended to prevent." Barancik, 489 F.2d at 938. However, the basic harm the statute was intended to prevent was not the liberal granting of protective orders, per se, but the "needless friction between state and federal courts." Mitchum v. Foster, 407 U.S. 225, 233, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (internal quotation marks and citation omitted). Temporarily staying a potential state suit before it is filed so that an anti-suit injunction can be considered would seemingly create significantly less friction than allowing a state suit to be commenced, only to enjoin it after it is filed.
 
 
 32
 The Barancik court also suggested that its ruling had "the salutary advantage of discouraging the unseemly race to the state courthouse ... while the federal court had under consideration a motion for a status quo order." Barancik, 489 F.2d at 935 n. 5. But by hinging the applicability of § 2283 on whether the state or federal suit is commenced first, the Barancik rule creates a race to the courthouse of its own. See Roth, 583 F.2d at 533 (noting that the Barancik rule "merely moves the finish line"). Even worse, following Barancik would permit a federal court plaintiff who wins this race, to "unilaterally ... nullify the effectiveness of" the Act with the "mere application for injunctive relief." Standard Microsystems, 916 F.2d at 62; see also Diane P. Wood, Fine-tuning Judicial Federalism: A Proposal for Reform of the Anti-Injunction Act, 1990 B.Y.U. L.Rev. 289, 312 (1990) (arguing that the Barancik court's result does not seem "in line with the statute" because the "Act would become too easy to evade in many cases if the timing of the request for the injunction became the dispositive factor").
 
 
 33
 Although we recognize the legitimacy of the concerns raised by the Seventh Circuit in Barancik, the exception it created to meet these concerns poses its own problems. Moreover, even if application of the Barancik holding would result in better policy in the eyes of some, this is not the course Congress has chosen in the Act; views as to good policy cannot overcome a clear statutory directive. See, e.g., Sigmon Coal Co., Inc. v. Apfel, 226 F.3d 291, 308 (4th Cir.2000) (noting that "our job is to determine the meaning of the statute passed by Congress, not whether wisdom or logic suggests that Congress could have done better"). Therefore, we hold that the Act's prohibition on enjoining state court proceedings applies to any such proceeding pending at the time the federal court acts on the request for injunctive relief, regardless of when the state court action was filed. Since the California proceeding was clearly pending at the time the district court acted on Denny's request for injunctive relief, the Act bars the relief Denny's requested.
 
 
 34
 Because the Act rendered the district court powerless to issue any of the relief Denny's requested, see supra n. 8, its complaint should have been dismissed for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Accordingly, we vacate the judgment of the district court dismissing for lack of personal jurisdiction and remand with instructions to enter an order dismissing the case for failure to state a claim upon which relief can be granted.[10]
 
 IV.
 
 35
 For the foregoing reasons, the judgment of the district court is VACATED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 We refer within to all plaintiffs/appellants — Denny's (in its fiduciary capacity as Plan administrator), the Plan, the Trust, and Andrew F. Green, in his capacity as trustee of the Trust — collectively as "Denny's."
 
 
 [2]
 This, of course, assumes that the assertion of personal jurisdiction over the Commissioner would satisfy Fifth Amendment due process requirements. The Commissioner tentatively argues that it would not. Brief of Appellee at 25 n.9. But the Commissioner has not demonstrated that the district court's assertion of personal jurisdiction over him would result in "such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy" evidenced by a nationwide service of process provisionESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 627 (4th Cir.1997). Nor has the Commissioner suggested any persuasive reason why the ESAB standard, formulated in the context of the RICO nationwide service of process provision, does not apply here. Accordingly, we reject this argument.
 
 
 [3]
 Contrary to Denny's assertions, § 1132(a)(3)(B) does not permit it to bring an action solely to seek a declaration that the Plan is an ERISA plan. Although a holding as to whether ERISA preempts the Commissioner's application of California law would necessarily include a determination as to whether Denny's plan is actually an ERISA plan, a suit to seekonly a declaration that the Plan is an ERISA plan could not stand on its own. Absent the Commissioner's threat to enforce California law against the Plan and Denny's contention that such enforcement would violate ERISA, no enforcement or potential violation of ERISA or the Plan would be at issue. Thus, as the district court noted, the "crux" of this case is "the issue of preemption." Denny's, 247 F.Supp.2d at 817 n. 6. Because an action seeking only a declaratory judgment that the Plan is an ERISA plan would not enforce or remedy a violation of ERISA or the Plan, it could not be brought under § 1132(a)(3); in fact, such an action would raise no case or controversy. See U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 2201 (2000) (authorizing federal courts to issue declaratory judgments only "[i]n a case of actual controversy").
 
 
 [4]
 Like the district court, we presume Denny's is an ERISA fiduciary for purposes of jurisdiction. In doing so, we have not thereby drawn any conclusion as to the merits of Denny's allegation that the Plan is an ERISA plan, which is central to the determination of whether ERISA preempts the Commissioner's application of state law in this caseSee supra note 3. To the extent that the question of subject matter jurisdiction under § 1132(a)(3) "involves the merits of [this] dispute," we thus follow "the proper course of action," i.e. upon "find[ing] that jurisdiction exists," we leave any objections to be dealt with "as a direct attack on the merits of the plaintiff's case." United States v. North Carolina, 180 F.3d 574, 580 (4th Cir.1999) (internal quotation marks and citation omitted).
 
 
 [5]
 "Complete preemption" differs from "ordinary" or "conflict" preemption. Conflict preemption arises when a defendant asserts the affirmative defense that a plaintiff's state law claim is preempted by federal lawSonoco Products Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370-71 (4th Cir.2003). Normally, conflict preemption "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." Id. at 371 (internal quotation marks and citation omitted). By contrast, complete preemption exists when "Congress so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. (internal quotation marks and citation omitted). With complete preemption, removal to federal court is possible because "the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute." Id. (internal quotation marks and citation omitted).
 
 
 [6]
 InGulf Life, 809 F.2d at 1523, the fiduciary did not request an injunction and the court determined that the requested declaration was not "equitable in nature," and so could not be brought under § 1132(a)(3) for this additional reason. Here, of course, Denny's does seek an injunction and so § 1132(a)(3)(B) relief cannot be denied on that basis. Moreover, the "underlying controversy" here is "equitable" in nature: an effort to force Denny's, via an injunction, to comply with California law. See Transamerica Occidental Life Ins. Co. v. DiGregorio, 811 F.2d 1249, 1251 (9th Cir.1987) (noting that "a particular declaratory judgment draws its equitable or legal substance from the nature of the underlying controversy"). Thus, the declaratory relief sought in this case clearly also qualifies as "appropriate equitable relief" under § 1132(a)(3)(B).
 
 
 [7]
 The Commissioner's attempts to distinguishThiokol do not persuade us. True, Thiokol did not involve any question as to personal jurisdiction under § 1132(e)(2), but it clearly did involve whether a federal court had jurisdiction over a § 1144 preemption claim under § 1132(a)(3) — the determinative question for personal jurisdiction here — and the Sixth Circuit unequivocally held that it did. Thiokol, 987 F.2d at 380. Moreover, whether the Thiokol court properly decided another issue — the applicability of the Tax Injunction Act, 28 U.S.C. § 1341 (2000) — does not affect the correctness of the court's § 1132(a)(3) ruling.
 
 
 [8]
 Although Denny's does not specifically request an "injunction to stay proceedings in State court," it does seek to enjoin state officials "from taking any action to enforce California law against it." If granted, this relief amounts to a "stay of proceedings in a State court."See, e.g. Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) (finding that the Act "cannot be evaded" by framing an injunction as a restraint on a party rather than directly on the state court). Moreover, when the Act bars an injunction it "also bar[s] the issuance of a declaratory judgment that would have the same effect as an injunction." Texas Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 506 (5th Cir.1988) (en banc) (internal quotation marks and citation omitted). This is clearly the case here: Denny's request for a declaration that ERISA preempts the enforcement of a California labor law against the Plan has "the same effect" as its request for an injunction to prevent enforcement of that state law against the Plan; both "result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." Samuels v. Mackell, 401 U.S. 66, 72, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Thus, if the Act bars the injunction Denny's has sought, it also bars the declaratory relief it has sought. See, e.g., Employers Res. Mgmt. Co., Inc. v. Shannon, 65 F.3d 1126, 1129 (4th Cir.1995) (holding the Act barred the ERISA fiduciary from injunctive and declaratory relief); see also 17 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4222, at 503-04 & n.11 (2d ed. 1988 & Supp.1999) (collecting cases).
 
 
 [9]
 Denny's does not contend that the second or third exceptions apply. It does offer a brief and unpersuasive suggestion that" § 1132(a) of ERISA" constitutes express statutory authorization for an injunction and for this reason "operates as an exception" to the Act. Reply Brief at 10. We explicitly held to the contrary inEmployers Resource Management, 65 F.3d at 1130-34. Seizing on our statement there that we rejected "the notion that ERISA operates as an automatic exception" to the Act, id. at 1132, Denny's contends that we "did not hold that ERISA never operates as an exception." Reply Brief at 10 (emphasis in original). Denny's misreads our opinion. Although recognizing a "circuit split" on the question and factually distinguishing the cases taking the opposite view, we firmly aligned ourselves with the "sounder position" of the Third and Fifth Circuits and refused "to broaden the three narrow exceptions" to the Act. Employers' Res. Mgmt., 65 F.3d at 1133-34; see also Total Plan Servs., Inc. v. Texas Retailers Ass'n, Inc., 925 F.2d 142, 144 (5th Cir.1991); United States Steel Corp. Plan for Employee Ins. Benefits v. Musisko, 885 F.2d 1170, 1177-78 (3rd Cir.1989).
 
 
 [10]
 Given our holding, we need not address the Commissioner's contention thatYounger abstention also compels dismissal of Denny's suit.
 WILLIAMS, Circuit Judge, concurring in part and concurring in the judgment in part:
 At the outset, I concur completely in the majority's jurisdictional analysis. Having concluded that the district court had personal jurisdiction over the California state officials, this case requires our court to weigh in on two separate issues related to the Anti-Injunction Act that have divided the Courts of Appeals. I concur in the opinion of the court that the plain language of the Anti-Injunction Act bars an injunction in this case, unless one of its exceptions applies. In addition, because I believe that the judgment of the court is compelled by our prior decision in Employers Resource Management Co. v. Shannon, 65 F.3d 1126 (4th Cir.1995), I concur in the judgment that ERISA does not authorize an injunction of state court proceedings in this case. I write separately to highlight some of my concerns with these latter two issues.
 First, I address the application of the Anti-Injunction Act (AIA) to state proceedings filed after federal proceedings are filed. The plain language of the Anti-Injunction Act prohibits injunctions "to stay proceedings in a State court." 28 U.S.C.A. § 2283 (West 1994). Nothing in this language limits the prohibition to state actions filed before the federal action is filed. Moreover, interpreting a predecessor statute to the AIA, the Supreme Court held in Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922), that the predecessor statute barred the federal court from enjoining a state court action that was filed after the commencement of the federal court action. As my colleagues note, ante at 14, we may not disregard the plain language of a statute unless a literal application would lead to absurd results or would thwart the statute's obvious purpose. Although I agree with many of the concerns expressed by then-Judge Stevens in Barancik v. Investors Funding Corp., 489 F.2d 933 (7th Cir.1973), especially the fear that our holding will pressure federal courts to grant temporary restraining orders, see id. at 938, I do not believe that applying the AIA to later-filed state court proceedings leads to absurd results or thwarts the obvious purpose of the AIA. Accordingly, I agree with my colleagues that we are bound by the plain language of the statute and that the plain language of the AIA bars an injunction in this case, unless one of its exceptions applies.*
 Second, application of the AIA's "expressly authorized by Act of Congress" exception to this case also presents some very interesting issues. We addressed a similar issue in Employers Resource Management, and held that " § 1132(a) of ERISA does not operate as an automatic exception to the Anti-Injunction Act." Employers Res. Mgmt., 65 F.3d at 1129. Because the Supreme Court in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), held that 42 U.S.C.A. § 1983 was an expressly authorized exception to the AIA, we compared ERISA to § 1983. Id. at 1131. In making this comparison, we employed broad language that addressed ERISA as a whole. For example, we concluded that ERISA did not "create[] the type of `unique' federal right or remedy that was at issue in Mitchum's consideration of 42 U.S.C. § 1983" and that "[a] distrust of state courts did not play the same role in the development of ERISA as it did in the formation of § 1983." Id. Thus, we concluded that "[t]he ERISA statutory scheme is not sufficiently analogous to the scheme developed under § 1983 for us to extend Mitchum into the ERISA setting." Id.
 Despite this broad language, other passages from our opinion reflect a belief that ERISA might be an "expressly authorized" exception to the AIA, and for that reason I do not join footnote 9 of the majority's opinion. For example, we repeatedly mentioned that ERISA is not an "automatic exception" to the AIA — the negative inference being that ERISA could be an exception under certain circumstances. See id. at 1129, 1132, 1137. In addition, in distinguishing a case from another circuit, we noted that "[e]ven § 1132 of ERISA, which appears to create an exception to the Anti-Injunction Act, could not be read as making the mere filing of a state court proceeding a violation of ERISA." Id. at 1133 (emphases added). Although the opinion is not entirely clear, one possible exception could exist where a plan fiduciary could show that it would be unable to carry out its responsibilities under ERISA if it were subjected to state laws. Cf. id. at 1132 (noting that "ERM has never suggested that it will be unable `to carry out its responsibilities under ERISA' if it is subjected to Virginia insurance law"). If ERISA was an "expressly authorized" exception to the AIA in such circumstances, then the AIA likely would not apply to this case as Denny's has argued emphatically that it will be unable to carry out its responsibilities under ERISA if it is subjected to California labor law.
 Were we writing on a clean slate, I might conclude that ERISA should be an exception to the AIA in all cases where the plan fiduciary seeks injunctive relief against state officials who are trying to impose state law or regulations on an ERISA plan. That option, however, is not available to us after Employers Resource Management, because in that case, Virginia was attempting to apply its insurance laws to an ERISA plan. Thus, after Employers Resource Management, we are left with binding circuit precedent holding that at least one ERISA case is subject to the strictures of the AIA.
 Because of the same conflicting passages that are quoted above, however, I do not believe that Employers Resource Management answers the question of whether its holding necessarily extends to all ERISA cases (i.e., a categorical approach), or if instead we should apply a case-by-case approach to determine if ERISA is an "expressly authorized" exception under the circumstances of each particular case. I note that the majority in footnote 9 implicitly has adopted a categorical approach and extended Employers Resource Management to all ERISA cases. See ante at 12 n. 9; see also Total Plan Services, Inc. v. Texas Retailers Assoc., Inc., 925 F.2d 142 (5th Cir.1991) (holding that § 1132(a)(3), which authorizes federal courts to "enjoin any act ... which violates" ERISA, is not an "expressly authorized" exception to the AIA because "the mere filing of a state court proceeding [is not] a `violation' of ERISA"). Some other circuits implicitly have adopted a case-by-case approach. See General Motors v. Buha, 623 F.2d 455 (6th Cir.1980) ("When a district court finds that an action in state court will have the effect of making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA, the anti-injunction provisions of § 2283 do not prohibit it from enjoining the state court proceedings."); United States Steel Corp. Plan for Employee Ins. Benefits v. Musisko, 885 F.2d 1170 (3d Cir.1989) (distinguishing Buha on its facts based on the "important factual differences between that case and this one — particularly in the type of plan and the nature of the relationship between the federal plaintiffs and their insurer").
 The Supreme Court has not spoken clearly as to whether the AIA should be interpreted using a categorical or a case-by-case approach. See Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977). In Vendo, the Court held that § 16 of the Clayton Act did not carve out an exception to the AIA. In a plurality opinion, then-Justice Rehnquist, joined by Justice Stewart and Justice Powell, focused solely on § 16 of the Clayton Act — its text and legislative history — to determine that the "expressly authorized" exception did not apply. Id. at 631-41, 97 S.Ct. 2881 (Rehnquist, J.). After recognizing that the plain language of § 16 of the Clayton Act, like ERISA, authorized injunctions, but did not mention state-court proceedings, Justice Rehnquist noted that
 in Mitchum, absence of express language authorization for enjoining state-court proceedings in § 1983 actions was cured by the presence of relevant legislative history. In this case, however, neither the respondents nor the courts below have called to our attention any similar legislative history in connection with the enactment of § 16 of the Clayton Act.
 Id. at 634, 97 S.Ct. 2881. Thus, he concluded, § 16 of the Clayton Act is never an exception to the AIA. Id. at 641, 97 S.Ct. 2881 (noting that to be an "expressly authorized" exception to the AIA, "the Act countenancing the federal injunction must necessarily interact with, or focus upon, a state judicial proceeding. Section 16 of the Clayton Act ... is clearly not such an Act."). This "categorical" approach mirrors the approach taken by the Court in Mitchum v. Foster, 407 U.S. 225, 238-43, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), when it held that § 1983 fell within the "expressly authorized" exception.
 In contrast, Justice Blackmun, joined by Chief Justice Burger, in his concurrence in the result in Vendo, applied a case-by-case approach. See Vendo, 433 U.S. at 643, 97 S.Ct. 2881 (Blackmun, J., concurring in the result) (noting that he "do[es] not agree that [it] is invariably the case" that § 16 of the Clayton Act is not an "expressly authorized" exception to the AIA). In Justice Blackmun's view, § 16 of the Clay-ton Act is an exception to the AIA if the "currently pending state-court proceedings ... are themselves part of a `pattern of baseless, repetitive claims' that are being used as an anticompetitive device, all the traditional prerequisites for equitable relief are satisfied, and the only way to give the antitrust laws their intended scope is by staying the state proceedings." Id.
 Justice Stevens, joined by Justice Brennan, Justice White, and Justice Marshall, dissented. Justice Stevens would have held that § 16 of the Clayton Act "is an Act of Congress which expressly authorizes an injunction against a state-court proceeding which violates the antitrust laws" even though there is no mention of state-court proceedings or the AIA in § 16. Id. at 654, 97 S.Ct. 2881 (Stevens, J., dissenting).
 
 
 I
 note that the categorical approach employed by Justice Rehnquist inVendo has much to recommend it. A categorical approach seems to be more consistent with the statutory language of the AIA, which speaks of "Act[s] of Congress" rather than the circumstances of particular cases. Moreover, a case-by-case approach likely would be difficult to administer. For example, every plan fiduciary would undoubtedly claim that it would be unable to carry out its responsibilities under ERISA if the state court proceeding continued, thus, in effect creating an exception for all ERISA fiduciary cases.
 In any event, we need not resolve that issue here because under either approach ERISA would not be an "expressly authorized" exception to the AIA in the circumstances of this case. If we apply a categorical approach, then we are hemmed in by our prior decision in Employers Resource Management. If, instead, we apply a case-by-case approach, the parties have not pointed us to anything in the text or legislative history of ERISA indicating that Congress intended to carve-out this type of case from the run-of-the-mill ERISA case. Accordingly, I concur in the majority's judgment that ERISA does not authorize the requested relief in this case.
 Notes:
 
 
 *
 I note that the facts of this case suggest a particularly troubling scenario. For example, even had Denny's requested a temporary restraining order against the filing of state court proceedings, the district court likely would have denied it based on the erroneous belief that it lacked personal jurisdiction. If so, the California state officials still would have been able to file their state court action, which we now hold cannot be enjoined by the federal court. In such a circumstance, the applicability of the AIA hinges entirely on the fortuity of the district court's erroneous procedural ruling